# EXHIBIT 2

TITLE 42. THE PUBLIC HEALTH AND WELFARE
CHAPTER 7. SOCIAL SECURITY ACT
TITLE XVIII. HEALTH INSURANCE FOR THE AGED AND DISABLED
PART B. SUPPLEMENTARY MEDICAL INSURANCE BENEFITS FOR THE AGED AND DISABLED

42 USC § 1395m

**§ 1395m. Special payment rules for particular items and services**

**(a) Payment for durable medical equipment.**
  (1) General rule for payment.
    (A) In general. With respect to a covered item (as defined in paragraph (13)) for which payment is determined under this subsection, payment shall be made in the frequency specified in paragraphs (2) through (7) and in an amount equal to 80 percent of the payment basis described in subparagraph (B).
    (B) Payment basis. Subject to subparagraph (F)(i), the payment basis described in this subparagraph is the lesser of--
      (i) the actual charge for the item, or
      (ii) the payment amount recognized under paragraphs (2) through (7) of this subsection for the item;
    except that clause (i) shall not apply if the covered item is furnished by a public home health agency (or by another home health agency which demonstrates to the satisfaction of the Secretary that a significant portion of its patients are low income) free of charge or at nominal charges to the public.
    (C) Exclusive payment rule. Subject to subparagraph (F)(ii), this subsection shall constitute the exclusive provision of this title [42 USCS §§ 1395 et seq.] for payment for covered items under this part [42 USCS §§ 1395j et seq.] or under part A [42 USCS §§ 1395c et seq.] to a home health agency.
    (D) Reduction in fee schedules for certain items. With respect to a seat-lift chair or transcutaneous electrical nerve stimulator furnished on or after April 1, 1990, the Secretary shall reduce the payment amount applied under subparagraph (B)(ii) for such an item by 15 percent, and, in the case of a transcutaneous electrical nerve stimulator furnished on or after January 1, 1991, the Secretary shall further reduce such payment amount (as previously reduced) by 45 percent.
    (E) Clinical conditions for coverage.
      (i) In general. The Secretary shall establish standards for clinical conditions for payment for covered items under this subsection.
      (ii) Requirements. The standards established under clause (i) shall include the specification of types or classes of covered items that require, as a condition of payment under this subsection, a face-to-face examination of the individual by a physician (as defined in section 1861(r)(1) [42 USCS § 1395x(r)(1)]), a physician assistant, nurse practitioner, or a clinical nurse specialist (as those terms are defined in section 1861(aa)(5) [42 USCS § 1395x(aa)(5)]) and a prescription for the item.
      (iii) Priority of establishment of standards. In establishing the standards under this subparagraph, the Secretary shall first establish standards for those covered items for which the Secretary determines there has been a proliferation of use, consistent findings of charges for covered items

that are not delivered, or consistent findings of falsification of documentation to provide for payment of such covered items under this part [42 USCS §§ 1395j et seq.].

 (iv) Standards for power wheelchairs. Effective on the date of the enactment of this subparagraph, in the case of a covered item consisting of a motorized or power wheelchair for an individual, payment may not be made for such covered item unless a physician (as defined in section 1861(r)(1) [42 USCS § 1395x(r)(1)]), a physician assistant, nurse practitioner, or a clinical nurse specialist (as those terms are defined in section 1861(aa)(5) [42 USCS § 1395x(aa)(5)]) has conducted a face-to-face examination of the individual and written a prescription for the item.

 (v) Limitation on payment for covered items. Payment may not be made for a covered item under this subsection unless the item meets any standards established under this subparagraph for clinical condition of coverage.

(F) Application of competitive acquisition; limitation of inherent reasonableness authority. In the case of covered items furnished on or after January 1, 2009, that are included in a competitive acquisition program in a competitive acquisition area under section 1847(a) [42 USCS § 395w-3(a)]--

 (i) the payment basis under this subsection for such items and services furnished in such area shall be the payment basis determined under such competitive acquisition program; and

 (ii) the Secretary may use information on the payment determined under such competitive acquisition programs to adjust the payment amount otherwise recognized under subparagraph (B)(ii) for an area that is not a competitive acquisition area under section 1847 [42 USCS § 1395w-3] and in the case of such adjustment, paragraph (10)(B) shall not be applied.

(2) Payment for inexpensive and other routinely purchased durable medical equipment.

(A) In general. Payment for an item of durable medical equipment (as defined in paragraph (13))--

 (i) the purchase price of which does not exceed $ 150,

 (ii) which the Secretary determines is acquired at least 75 percent of the time by purchase, or

 (iii) which is an accessory used in conjunction with a nebulizer, aspirator, or a ventilator excluded under paragraph (3)(A),

shall be made on a rental basis or in a lump-sum amount for the purchase of the item. The payment amount recognized for purchase or rental of such equipment is the amount specified in subparagraph (B) for purchase or rental, except that the total amount of payments with respect to an item may not exceed the payment amount specified in subparagraph (B) with respect to the purchase of the item.

(B) Payment amount. For purposes of subparagraph (A), the amount specified in this subparagraph, with respect to the purchase or rental of an item furnished in a carrier service area--

 (i) in 1989 and in 1990 is the average reasonable charge in the area for the purchase or rental, respectively, of the item for the 12-month period ending on June 30, 1987, increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) for the 6-month period ending with December 1987;

 (ii) in 1991 is the sum of (I) 67 percent of the local payment amount for the item or device computed under subparagraph (C)(i)(I) for 1991, and (II) 33 percent of the national limited payment amount for the item or device computed under subparagraph (C)(ii) for 1991;

 (iii) in 1992 is the sum of (I) 33 percent of the local payment amount for the item or device computed under subparagraph (C)(i)(II) for 1992, and (II) 67 percent of the national limited payment amount for the item or device computed under subparagraph (C)(ii) for 1992; and

(iv) in 1993 and each subsequent year is the national limited payment amount for the item or device computed under subparagraph (C)(ii) for that year (reduced by 10 percent, in the case of a blood glucose testing strip furnished after 1997 for an individual with diabetes).

(C) Computation of local payment amount and national limited payment amount. For purposes of subparagraph (B)--

(i) the local payment amount for an item or device for a year is equal to--

(I) for 1991, the amount specified in subparagraph (B)(i) for 1990 increased by the covered item update for 1991, and

(II) for 1992, 1993, and 1994, the amount determined under this clause for the preceding year increased by the covered item update for the year; and

(ii) the national limited payment amount for an item or device for a year is equal to--

(I) for 1991, the local payment amount determined under clause (i) for such item or device for that year, except that the national limited payment amount may not exceed 100 percent of the weighted average of all local payment amounts determined under such clause for such item for that year and may not be less than 85 percent of the weighted average of all local payment amounts determined under such clause for such item,

(II) for 1992 and 1993, the amount determined under this clause for the preceding year increased by the covered item update for such subsequent year,

(III) for 1994, the local payment amount determined under clause (i) for such item or device for that year, except that the national limited payment amount may not exceed 100 percent of the median of all local payment amounts determined under such clause for such item for that year and may not be less than 85 percent of the median of all local payment amounts determined under such clause for such item or device for that year, and

(IV) for each subsequent year, the amount determined under this clause for the preceding year increased by the covered item update for such subsequent year.

(3) Payment for items requiring frequent and substantial servicing.

(A) In general. Payment for a covered item (such as IPPB machines and ventilators, excluding ventilators that are either continuous airway pressure devices or intermittent assist devices with continuous airway pressure devices) for which there must be frequent and substantial servicing in order to avoid risk to the patient's health shall be made on a monthly basis for the rental of the item and the amount recognized is the amount specified in subparagraph (B).

(B) Payment amount. For purposes of subparagraph (A), the amount specified in this subparagraph, with respect to an item or device furnished in a carrier service area--

(i) in 1989 and in 1990 is the average reasonable charge in the area for the rental of the item or device for the 12-month period ending with June 1987, increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) for the 6-month period ending with December 1987;

(ii) in 1991 is the sum of (I) 67 percent of the local payment amount for the item or device computed under subparagraph (C)(i)(I) for 1991, and (II) 33 percent of the national limited payment amount for the item or device computed under subparagraph (C)(ii) for 1991;

(iii) in 1992 is the sum of (I) 33 percent of the local payment amount for the item or device computed under subparagraph (C)(i)(II) for 1992, and (II) 67 percent of the national limited payment amount for the item or device computed under subparagraph (C)(ii) for 1992; and

(iv) in 1993 and each subsequent year is the national limited payment amount for the item or device computed under subparagraph (C)(ii) for that year.

(C) Computation of local payment amount and national limited payment amount. For purposes of subparagraph (B)--

(i) the local payment amount for an item or device for a year is equal to--

(I) for 1991, the amount specified in subparagraph (B)(i) for 1990 increased by the covered item update for 1991, and

(II) for 1992, 1993, and 1994, the amount determined under this clause for the preceding year increased by the covered item update for the year; and

(ii) the national limited payment amount for an item or device for a year is equal to--

(I) for 1991, the local payment amount determined under clause (i) for such item or device for that year, except that the national limited payment amount may not exceed 100 percent of the weighted average of all local payment amounts determined under such clause for such item for that year and may not be less than 85 percent of the weighted average of all local payment amounts determined under such clause for such item,

(II) for 1992 and 1993, the amount determined under this clause for the preceding year increased by the covered item update for such subsequent year,

(III) for 1994, the local payment amount determined under clause (i) for such item or device for that year, except that the national limited payment amount may not exceed 100 percent of the median of all local payment amounts determined under such clause for such item for that year and may not be less than 85 percent of the median of all local payment amounts determined under such clause for such item or device for that year, and

(IV) for each subsequent year, the amount determined under this clause for the preceding year increased by the covered item update for such subsequent year.

(4) Payment for certain customized items. Payment with respect to a covered item that is uniquely constructed or substantially modified to meet the specific needs of an individual patient, and for the reason cannot be grouped with similar items for purposes of payment under this title [42 USCS §§ 1395 et seq.], shall be made in a lump-sum amount (A) for the purchase of the item in a payment amount based upon the carrier's individual consideration for that item, and (B) for the reasonable and necessary maintenance and servicing for parts and labor not covered by the supplier's or manufacturer's warranty, when necessary during the period of medical need, and the amount recognized for such maintenance and servicing shall be paid on a lump-sum, as needed basis upon the carrier's individual consideration for that item.

(5) Payment for oxygen and oxygen equipment.

(A) In general. Payment for oxygen and oxygen equipment shall be made on a monthly basis in the monthly payment amount recognized under paragraph (9) for oxygen and oxygen equipment (other than portable oxygen equipment), subject to subparagraphs (B), (C), and (E).

(B) Add-on for portable oxygen equipment. When portable oxygen equipment is used, but subject to subparagraph (D), the payment amount recognized under subparagraph (A) shall be increased by the monthly payment amount recognized under paragraph (9) for portable oxygen equipment.

(C) Volume adjustment. When the attending physician prescribes an oxygen flow rate--

(i) exceeding 4 liters per minute, the payment amount recognized under subparagraph (A), subject to subparagraph (D), shall be increased by 50 percent, or

(ii) of less than 1 liter per minute, the payment amount recognized under subparagraph (A) shall be decreased by 50 percent.

(D) Limit on adjustment. When portable oxygen equipment is used and the attending physician prescribes an oxygen flow rate exceeding 4 liters per minute, there shall only be an increase under

either subparagraph (B) or (C), whichever increase is larger, and not under both such subparagraphs.

(E) Recertification for patients receiving home oxygen therapy. In the case of a patient receiving home oxygen therapy services who, at the time such services are initiated, has an initial arterial blood gas value at or above a partial pressure of 56 or an arterial oxygen saturation at or above 89 percent (or such other values, pressures, or criteria as the Secretary may specify) no payment may be made under this part [42 USCS §§ 1395j et seq.] for such services after the expiration of the 90-day period that begins on the date the patient first receives such services unless the patient's attending physician certifies that, on the basis of a follow-up test of the patient's arterial blood gas value or arterial oxygen saturation conducted during the final 30 days of such 90-day period, there is a medical need for the patient to continue to receive such services.

(6) Payment for other covered items (other than durable medical equipment). Payment for other covered items (other than durable medical equipment and other covered items described in paragraph (3), (4), or (5)) shall be made in a lump-sum amount for the purchase of the item in the amount of the purchase price recognized under paragraph (8).

(7) Payment for other items of durable medical equipment.

(A) In general. In the case of an item of durable medical equipment not described in paragraphs (2) through (6)--

(i) payment shall be made on a monthly basis for the rental of such item during the period of medical need (but payments under this clause may not extend over a period of continuous use of longer than 15 months, or, in the case of an item for which a purchase agreement has been entered into under clause (iii), a period of continuous use of longer than 13 months), and, subject to subparagraph (B), the amount recognized for each of the first 3 months of such period is 10 percent of the purchase price recognized under paragraph (8) with respect to the item, and for each of the remaining months of such period is 7.5 percent of such purchase price;

(ii) in the case of a power-driven wheelchair, at the time the supplier furnishes the item, the supplier shall offer the individual patient the option to purchase the item, and payment for such item shall be made on a lump-sum basis if the patient exercises such option;

(iii) during the 10th continuous month during which payment is made for the rental of an item under clause (i), the supplier of such item shall offer the individual patient the option to enter into a purchase agreement under which, if the patient notifies the supplier not later than 1 month after the supplier makes such offer that the patient agrees to accept such offer and exercise such option--

(I) the supplier shall transfer title to the item to the individual patient on the first day that begins after the 13th continuous month during which payment is made for the rental of the item under clause (i),

(II) after the supplier transfers title to the item under subclause (I), maintenance and servicing payments shall be made in accordance with clause (vi);

(iv) in the case of an item for which a purchase agreement has not been entered into under clause (ii) or clause (iii), during the first 6-month period of medical need that follows the period of medical need during which payment is made under clause (i), no payment shall be made for rental or maintenance and servicing of the item;

(v) in the case of an item for which a purchase agreement has not been entered into under clause (ii) or clause (iii), during the first month of each succeeding 6-month period of medical need, a maintenance and servicing payment may be made (for parts and labor not covered by the supplier's or manufacturer's warranty, as determined by the Secretary to be appropriate for the particular type of durable medical equipment) and the amount recognized for each such 6-month period is

the lower of (I) a reasonable and necessary maintenance and servicing fee or fees established by the Secretary, or (II) 10 percent of the total of the purchase price recognized under paragraph (8) with respect to the item; and

(vi) in the case of an item for which a purchase agreement has been entered into under clause (ii) or clause (iii), maintenance and servicing payments may be made (for parts and labor not covered by the supplier's or manufacturer's warranty, as determined by the Secretary to be appropriate for the particular type of durable medical equipment), and such payments shall be in an amount established by the Secretary on the basis of reasonable charges in the locality for maintenance and servicing.

The Secretary shall determine the meaning of the term "continuous" in subparagraph (A).

(B) Range for rental amounts.

(i) For 1989. For items furnished during 1989, the payment amount recognized under subparagraph (A)(i) shall not be more than 115 percent, and shall not be less than 85 percent, of the prevailing charge established for rental of the item in January 1987, increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) for the 6-month period ending with December 1987.

(ii) For 1990. For items furnished during 1990, clause (i) shall apply in the same manner as it applies to items furnished during 1989.

(C) Replacement of items.

(i) Establishment of reasonable useful lifetime. In accordance with clause (iii), the Secretary shall determine and establish a reasonable useful lifetime for items of durable medical equipment for which payment may be made under this paragraph.

(ii) Payment for replacement items. If the reasonable lifetime of such an item, as so established, has been reached during a continuous period of medical need, or the carrier determines that the item is lost or irreparably damaged, the patient may elect to have payment for an item serving as a replacement for such item made--

(I) on a monthly basis for the rental of the replacement item in accordance with subparagraph (A); or

(II) in the case of an item for which a purchase agreement has been entered into under subparagraph (A)(ii) or (A)(iii), in a lump-sum amount for the purchase of the item.

(iii) Length of reasonable useful lifetime. The reasonable useful lifetime of an item of durable medical equipment under this subparagraph shall be equal to 5 years, except that, if the Secretary determines that, on the basis of prior experience in making payments for such an item under this title [42 USCS §§ 1395 et seq.], a reasonable useful lifetime of 5 years is not appropriate with respect to a particular item, the Secretary shall establish an alternative reasonable lifetime for such item.

(8) Purchase price recognized for miscellaneous devices and items. For purposes of paragraphs (6) and (7), the amount that is recognized under this paragraph as the purchase price for a covered item is the amount described in subparagraph (C) of this paragraph, determined as follows:

(A) Computation of local purchase price. Each carrier under section 1842 [42 USCS § 1395u] shall compute a base local purchase price for the item as follows:

(i) The carrier shall compute a base local purchase price, for each item described--

(I) in paragraph (6) equal to the average reasonable charge in the locality for the purchase of the item for the 12-month period ending with June 1987, or

    (II) in paragraph (7) equal to the average of the purchase prices on the claims submitted on an assignment-related basis for the unused item supplied during the 6-month period ending with December 1986.

   (ii) The carrier shall compute a local purchase price, with respect to the furnishing of each particular item--

    (I) in 1989 and 1990, equal to the base local purchase price computed under clause (i) increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) for the 6-month period ending with December 1987,

    (II) in 1991, equal to the local purchase price computed under this clause for the previous year, increased by the covered item update for 1991, and decreased by the percentage by which the average of the reasonable charges for claims paid for all items described in paragraph (7) is lower than the average of the purchase prices submitted for such items during the final 9 months of 1988;[,] or

    (III) in 1992, 1993, and 1994, equal to the local purchase price computed under this clause for the previous year increased by the covered item update for the year.

  (B) Computation of national limited purchase price. With respect to the furnishing of a particular item in a year, the Secretary shall compute a national limited purchase price--

   (i) for 1991, equal to the local purchase price computed under subparagraph (A)(ii) for the item for the year, except that such national limited purchase price may not exceed 100 percent of the weighted average of all local purchase prices for the item computed under such subparagraph for the year, and may not be less than 85 percent of the weighted average of all local purchase prices for the item computed under such subparagraph for the year;

   (ii) for 1992 and 1993, the amount determined under this subparagraph for the preceding year increased by the covered item update for such subsequent year;

   (iii) for 1994, the local purchase price computed under subparagraph (A)(ii) for the item for the year, except that such national limited purchase price may not exceed 100 percent of the median of all local purchase prices computed for the item under such subparagraph for the year and may not be less than 85 percent of the median of all local purchase prices computed under such subparagraph for the item for the year; and

   (iv) for each subsequent year, equal to the amount determined under this subparagraph for the preceding year increased by the covered item update for such subsequent year.

  (C) Purchase price recognized. For purposes of paragraphs (6) and (7), the amount that is recognized under this paragraph as the purchase price for each item furnished--

   (i) in 1989 or 1990, is 100 percent of the local purchase price computed under subparagraph (A)(ii)(I);

   (ii) in 1991, is the sum of (I) 67 percent of the local purchase price computed under subparagraph (A)(ii)(II) for 1991, and (II) 33 percent of the national limited purchase price computed under subparagraph (B) for 1991;

   (iii) in 1992, is the sum of (I) 33 percent of the local purchase price computed under subparagraph (A)(ii)(III) for 1992, and (II) 67 percent of the national limited purchase price computed under subparagraph (B) for 1992; and

   (iv) in 1993 or a subsequent year, is the national limited purchase price computed under subparagraph (B) for that year.

 (9) Monthly payment amount recognized with respect to oxygen and oxygen equipment. For purposes of paragraph (5), the amount that is recognized under this paragraph for payment for oxygen and oxygen equipment is the monthly payment amount described in subparagraph (C) of this para-

graph. Such amount shall be computed separately (i) for all items of oxygen and oxygen equipment (other than portable oxygen equipment) and (ii) for portable oxygen equipment (each such group referred to in this paragraph as an "item").

    (A) Computation of local monthly payment rate. Each carrier under this section shall compute a base local payment rate for each item as follows:

        (i) The carrier shall compute a base local average monthly payment rate per beneficiary as an amount equal to (I) the total reasonable charges for the item during the 12-month period ending with December 1986, divided by (II) the total number of months for all beneficiaries receiving the item in the area during the 12-month period for which the carrier made payment for the item under this title [42 USCS §§ 1395 et seq.].

        (ii) The carrier shall compute a local average monthly payment rate for the item applicable--

            (I) to 1989 and 1990, equal to 95 percent of the base local average monthly payment rate computed under clause (i) for the item increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) for the 6-month period ending with December 1987, or

            (II) to 1991, 1992, 1993, and 1994, equal to the local average monthly payment rate computed under this clause for the item for the previous year increased by the covered item increase for the year.

    (B) Computation of national limited monthly payment rate. With respect to the furnishing of an item in a year, the Secretary shall compute a national limited monthly payment rate equal to--

        (i) for 1991, the local monthly payment rate computed under subparagraph (A)(ii)(II) for the item for the year, except that such national limited monthly payment rate may not exceed 100 percent of the weighted average of all local monthly payment rates computed for the item under such subparagraph for the year, and may not be less than 85 percent of the weighted average of all local monthly payment rates computed for the item under such subparagraph for the year;

        (ii) for 1992 and 1993, the amount determined under this subparagraph for the preceding year increased by the covered item update for such subsequent year;

        (iii) for 1994, the local monthly payment rate computed under subparagraph (A)(ii) for the item for the year, except that such national limited monthly payment rate may not exceed 100 percent of the median of all local monthly payment rates computed for the item under such subparagraph for the year and may not be less than 85 percent of the median of all local monthly payment rates computed for the item under such subparagraph for the year;

        (iv) for 1995, 1996, and 1997, equal to the amount determined under this subparagraph for the preceding year increased by the covered item update for such subsequent year;

        (v) for 1998, 75 percent of the amount determined under this subparagraph for 1997; and

        (vi) for 1999 and each subsequent year, 70 percent of the amount determined under this subparagraph for 1997.

    (C) Monthly payment amount recognized. For purposes of paragraph (5), the amount that is recognized under this paragraph as the base monthly payment amount for each item furnished--

        (i) in 1989 and in 1990, is 100 percent of the local average monthly payment rate computed under subparagraph (A)(ii) for the item;

        (ii) in 1991, is the sum of (I) 67 percent of the local average monthly payment rate computed under subparagraph (A)(ii)(II) for the item for 1991, and (II) 33 percent of the national limited monthly payment rate computed under subparagraph (B)(i) for the item for 1991;

   (iii) in 1992, is the sum of (I) 33 percent of the local average monthly payment rate computed under subparagraph (A)(ii)(II) for the item for 1992, and (II) 67 percent of the national limited monthly payment rate computed under subparagraph (B)(ii) for the item for 1992; and
   (iv) in a subsequent year, is the regional monthly payment rate computed under subparagraph (B) for the item for that year.
   (D) Authority to create classes.
   (i) In general. Subject to clause (ii), the Secretary may establish separate classes for any item of oxygen and oxygen equipment and separate national limited monthly payment rates for each of such classes.
   (ii) Budget neutrality. The Secretary may take actions under clause (i) only to the extent such actions do not result in expenditures for any year to be more or less than the expenditures which would have been made if such actions had not been taken.
  (10) Exceptions and adjustments.
   (A) Areas outside continental United States. Exceptions to the amounts recognized under the previous provisions of this subsection shall be made to take into account the unique circumstances of covered items furnished in Alaska, Hawaii, or Puerto Rico.
   (B) Adjustment for inherent reasonableness. The Secretary is authorized to apply the provisions of paragraphs (8) and (9) of section 1842(b) [42 USCS § 1395u(b)] to covered items and suppliers of such items and payments under this subsection in an area and with respect to covered items and services for which the Secretary does not make a payment amount adjustment under paragraph (1)(F).
   (C) Transcutaneous electrical nerve stimulator (TENS). In order to permit an attending physician time to determine whether the purchase of a transcutaneous electrical nerve stimulator is medically appropriate for a particular patient, the Secretary may determine an appropriate payment amount for the initial rental of such item for a period of not more than 2 months. If such item is subsequently purchased, the payment amount with respect to such purchase is the payment amount determined under paragraph (2).
  (11) Improper billing and requirement of physician order.
   (A) Improper billing for certain rental items. Notwithstanding any other provision of this title [42 USCS §§ 1395 et seq.], a supplier of a covered item for which payment is made under this subsection and which is furnished on a rental basis shall continue to supply the item without charge (other than a charge provided under this subsection for the maintenance and servicing of the item) after rental payments may no longer be made under this subsection. If a supplier knowingly and willfully violates the previous sentence, the Secretary may apply sanctions against the supplier under section 1842(j)(2) [42 USCS § 1395u(j)(2)] in the same manner such sanctions may apply with respect to a physician.
   (B) Requirement of physician order. The Secretary is authorized to require, for specified covered items, that payment may be made under this subsection with respect to the item only if a physician has communicated to the supplier, before delivery of the item, a written order for the item.
  (12) Regional carriers. The Secretary may designate, by regulation under section 1842 [42 USCS § 1395u], one carrier for one or more entire regions to process all claims within the region for covered items under this section.
  (13) "Covered item" defined. In this subsection, the term "covered item" means durable medical equipment (as defined in section 1861(n) [42 USCS § 1395x(n)]), including such equipment described in section 1861(m)(5) [42 USCS § 1395x(m)(5)], but not including implantable items for which payment may be made under section 1833(t) [42 USCS § 1395l(t)]l)].

(14) Covered item update. In this subsection, the term "covered item update" means, with respect to a year--

(A) for 1991 and 1992, the percentage increase in the consumer price index for all urban consumers (U.S. city average) for the 12-month period ending with June of the previous year reduced by 1 percentage point;

(B) for 1993, 1994, 1995, 1996, and 1997, the percentage increase in the consumer price index for all urban consumers (U.S. city average) for the 12-month period ending with June of the previous year;

(C) for each of the years 1998 through 2000, 0 percentage points;

(D) for 2001, the percentage increase in the consumer price index for all urban consumers (U.S. city average) for the 12-month period ending with June 2000;

(E) for 2002, 0 percentage points;

(F) for 2003, the percentage increase in the consumer price index for all urban consumers (U.S. urban average) for the 12-month period ending with June of the 2002;

(G) for 2004 through 2006--

(i) subject to clause (ii), in the case of class III medical devices described in section 513(a)(1)(C) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360(c)(1)(C) [21 USCS § 360c(c)(1)(C)]), the percentage increase described in subparagraph (B) for the year involved; and

(ii) in the case of covered items not described in clause (i), 0 percentage points;

(H) for 2007--

(i) subject to clause (ii), in the case of class III medical devices described in section 513(a)(1)(C) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360(c)(1)(C) [21 USCS § 360c(c)(1)(C)]), the percentage change determined by the Secretary to be appropriate taking into account recommendations contained in the report of the Comptroller General of the United States under section 302(c)(1)(B) of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 [note to this section]; and

(ii) in the case of covered items not described in clause (i), 0 percentage points; and

(I) for 2008--

(i) subject to clause (ii), in the case of class III medical devices described in section 513(a)(1)(C) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 360(c)(1)(C) [21 USCS § 360c(c)(1)(C)]), the percentage increase described in subparagraph (B) (as applied to the payment amount for 2007 determined after the application of the percentage change under subparagraph (H)(i)); and

(ii) in the case of covered items not described in clause (i), 0 percentage points; and

(J) for a subsequent year, the percentage increase in the consumer price index for all urban consumers (U.S. urban average) for the 12-month period ending with June of the previous year.

(15) Advance determinations of coverage for certain items.

(A) Development of lists of items by Secretary. The Secretary may develop and periodically update a list of items for which payment may be made under this subsection that the Secretary determines, on the basis of prior payment experience, are frequently subject to unnecessary utilization throughout a carrier's entire service area or a portion of such area.

(B) Development of lists of suppliers by Secretary. The Secretary may develop and periodically update a list of suppliers of items for which payment may be made under this subsection with respect to whom--

(i) the Secretary has found that a substantial number of claims for payment under this part for items furnished by the supplier have been denied on the basis of the application of section 1862(a)(1) [42 USCS § 1395y(a)(1)]; or

(ii) the Secretary has identified a pattern of overutilization resulting from the business practice of the supplier.

(C) Determinations of coverage in advance. A carrier shall determine in advance of delivery of an item whether payment for the item may not be made because the item is not covered or because of the application of section 1862(a)(1) [42 USCS § 1395y(a)(1)] if--

(i) the item is included on the list developed by the Secretary under subparagraph (A);

(ii) the item is furnished by a supplier included on the list developed by the Secretary under subparagraph (B); or

(iii) the item is a customized item (other than inexpensive items specified by the Secretary) and the patient to whom the item is to be furnished or the supplier requests that such advance determination be made.

(16) Disclosure of information and surety bond. The Secretary shall not provide for the issuance (or renewal) of a provider number for a supplier of durable medical equipment, for purposes of payment under this part [42 USCS §§ 1395j et seq.] for durable medical equipment furnished by the supplier, unless the supplier provides the Secretary on a continuing basis--

(A) with--

(i) full and complete information as to the identity of each person with an ownership or control interest (as defined in section 1124(a)(3) [42 USCS § 1320a-3(a)(3)]) in the supplier or in any subcontractor (as defined by the Secretary in regulations) in which the supplier directly or indirectly has a 5 percent or more ownership interest; and

(ii) to the extent determined to be feasible under regulations of the Secretary, the name of any disclosing entity (as defined in section 1124(a)(2) [42 USCS § 1320a-3(a)(2)]) with respect to which a person with such an ownership or control interest in the supplier is a person with such an ownership or control interest in the disclosing entity; and

(B) with a surety bond in a form specified by the Secretary and in an amount that is not less than $ 50,000.

The Secretary may waive the requirement of a bond under subparagraph (B) in the case of a supplier that provides a comparable surety bond under State law. The Secretary, at the Secretary's discretion, may impose the requirements of the first sentence with respect to some or all providers of items or services under part A [42 USCS §§ 1395c et seq.] or some or all suppliers or other persons (other than physicians or other practitioners, as defined in section 1842(b)(18)(C) [42 USCS § 1395u(b)(18)(C)]) who furnish items or services under this part [42 USCS §§ 1395j et seq.].

(17) Prohibition against unsolicited telephone contacts by suppliers.

(A) In general. A supplier of a covered item under this subsection may not contact an individual enrolled under this part by telephone regarding the furnishing of a covered item to the individual unless 1 of the following applies:

(i) The individual has given written permission to the supplier to make contact by telephone regarding the furnishing of a covered item.

(ii) The supplier has furnished a covered item to the individual and the supplier is contacting the individual only regarding the furnishing of such covered item.

(iii) If the contact is regarding the furnishing of a covered item other than a covered item already furnished to the individual, the supplier has furnished at least 1 covered item to the individual during the 15-month period preceding the date on which the supplier makes such contact.

(B) Prohibiting payment for items furnished subsequent to unsolicited contacts. If a supplier knowingly contacts an individual in violation of subparagraph (A), no payment may be made under this part for any item subsequently furnished to the individual by the supplier.

(C) Exclusion from program for suppliers engaging in pattern of unsolicited contacts. If a supplier knowingly contacts individuals in violation of subparagraph (A) to such an extent that the supplier's conduct establishes a pattern of contacts in violation of such subparagraph, the Secretary shall exclude the supplier from participation in the programs under this Act, in accordance with the procedures set forth in subsections (c), (f), and (g) of section 1128 [42 USCS § 1320a-7].

(18) Refund of amounts collected for certain disallowed items.

(A) In general. If a nonparticipating supplier furnishes to an individual enrolled under this part [42 USCS §§ 1395j et seq.] a covered item for which no payment may be made under this part by reason of paragraph (17)(B), the supplier shall refund on a timely basis to the patient (and shall be liable to the patient for) any amounts collected from the patient for the item, unless--

(i) the supplier establishes that the supplier did not know and could not reasonably have been expected to know that payment may not be made for the item by reason of paragraph (17)(B), or

(ii) before the item was furnished, the patient was informed that payment under this part may not be made for that item and the patient has agreed to pay for that item.

(B) Sanctions. If a supplier knowingly and willfully fails to make refunds in violation of subparagraph (A), the Secretary may apply sanctions against the supplier in accordance with section 1842(j)(2) [42 USCS § 1395u(j)(2)].

(C) Notice. Each carrier with a contract in effect under this part [42 USCS §§ 1395j et seq.] with respect to suppliers of covered items shall send any notice of denial of payment for covered items by reason of paragraph (17)(B) and for which payment is not requested on an assignment-related basis to the supplier and the patient involved.

(D) Timely basis defined. A refund under subparagraph (A) is considered to be on a timely basis only if--

(i) in the case of a supplier who does not request reconsideration or seek appeal on a timely basis, the refund is made within 30 days after the date the supplier receives a denial notice under subparagraph (C), or

(ii) in the case in which such a reconsideration or appeal is taken, the refund is made within 15 days after the date the supplier receives notice of an adverse determination on reconsideration or appeal.

(19) Certain upgraded items.

(A) Individual's right to choose upgraded item. Notwithstanding any other provision of this title [42 USCS §§ 1395 et seq.], the Secretary may issue regulations under which an individual may purchase or rent from a supplier an item of upgraded durable medical equipment for which payment would be made under this subsection if the item were a standard item.

(B) Payments to supplier. In the case of the purchase or rental of an upgraded item under subparagraph (A)--

(i) the supplier shall receive payment under this subsection with respect to such item as if such item were a standard item; and

(ii) the individual purchasing or renting the item shall pay the supplier an amount equal to the difference between the supplier's charge and the amount under clause (i).

In no event may the supplier's charge for an upgraded item exceed the applicable fee schedule amount (if any) for such item.

(C) Consumer protection safeguards. Any regulations under subparagraph (A) shall provide for consumer protection standards with respect to the furnishing of upgraded equipment under subparagraph (A). Such regulations shall provide for--
 (i) determination of fair market prices with respect to an upgraded item;
 (ii) full disclosure of the availability and price of standard items and proof of receipt of such disclosure information by the beneficiary before the furnishing of the upgraded item;
 (iii) conditions of participation for suppliers in the billing arrangement;
 (iv) sanctions of suppliers who are determined to engage in coercive or abusive practices, including exclusion; and
 (v) such other safeguards as the Secretary determines are necessary.
(20) Identification of quality standards.
 (A) In general. Subject to subparagraph (C), the Secretary shall establish and implement quality standards for suppliers of items and services described in subparagraph (D) to be applied by recognized independent accreditation organizations (as designated under subparagraph (B)) and with which such suppliers shall be required to comply in order to--
  (i) furnish any such item or service for which payment is made under this part [42 USCS §§ 1395j et seq.]; and
  (ii) receive or retain a provider or supplier number used to submit claims for reimbursement for any such item or service for which payment may be made under this title [42 USCS §§ 1395 et seq.].
 (B) Designation of independent accreditation organizations. Not later than the date that is 1 year after the date on which the Secretary implements the quality standards under subparagraph (A), notwithstanding section 1865(b) [42 USCS § 1395bb(b)], the Secretary shall designate and approve one or more independent accreditation organizations for purposes of such subparagraph.
 (C) Quality standards. The quality standards described in subparagraph (A) may not be less stringent than the quality standards that would otherwise apply if this paragraph did not apply and shall include consumer services standards.
 (D) Items and services described. The items and services described in this subparagraph are the following items and services, as the Secretary determines appropriate:
  (i) Covered items (as defined in paragraph (13)) for which payment may otherwise be made under this subsection.
  (ii) Prosthetic devices and orthotics and prosthetics described in section 1834(h)(4) [subsec. (h)(4) of this section].
  (iii) Items and services described in section 1842(s)(2) [42 USCS § 1395u(s)(2)].
 (E) Implementation. The Secretary may establish by program instruction or otherwise the quality standards under this paragraph, after consultation with representatives of relevant parties. Such standards shall be applied prospectively and shall be published on the Internet website of the Centers for Medicare & Medicaid Services.
(21) Special payment rule for specified items and supplies.
 (A) In general. Notwithstanding the preceding provisions of this subsection, for specified items and supplies (described in subparagraph (B)) furnished during 2005, the payment amount otherwise determined under this subsection for such specified items and supplies shall be reduced by the percentage difference between--
  (i) the amount of payment otherwise determined for the specified item or supply under this subsection for 2002, and

(ii) the amount of payment for the specified item or supply under chapter 89 of title 5, United States Code [5 USCS §§ 8901 et seq.], as identified in the column entitled "Median FEHP Price" in the table entitled "SUMMARY OF MEDICARE PRICES COMPARED TO VA, MEDICAID, RETAIL, AND FEHP PRICES FOR 16 ITEMS" included in the Testimony of the Inspector General before the Senate Committee on Appropriations, June 12, 2002, or any subsequent report by the Inspector General.

(B) Specified item or supply described. For purposes of subparagraph (A), a specified item or supply means oxygen and oxygen equipment, standard wheelchairs (including standard power wheelchairs), nebulizers, diabetic supplies consisting of lancets and testing strips, hospital beds, and air mattresses, but only if the HCPCS code for the item or supply is identified in a table referred to in subparagraph (A)(ii).

(C) Application of update to special payment amount. The covered item update under paragraph (14) for specified items and supplies for 2006 and each subsequent year shall be applied to the payment amount under subparagraph (A) unless payment is made for such items and supplies under section 1847 [42 USCS § 1395w-3].

* * * * *

**(j) Requirements for suppliers of medical equipment and supplies.**
(1) Issuance and renewal of supplier number.
(A) Payment. Except as provided in subparagraph (C), no payment may be made under this part after the date of the enactment of the Social Security Act Amendments of 1994 [enacted Oct. 31, 1994] for items furnished by a supplier of medical equipment and supplies unless such supplier obtains (and renews at such intervals as the Secretary may require) a supplier number.
(B) Standards for possessing a supplier number. A supplier may not obtain a supplier number unless--
(i) for medical equipment and supplies furnished on or after the date of the enactment of the Social Security Act Amendments of 1994 [enacted Oct. 31, 1994] and before January 1, 1996, the supplier meets standards prescribed by the Secretary in regulations issued on June 18, 1992; and
(ii) for medical equipment and supplies furnished on or after January 1, 1996, the supplier meets revised standards prescribed by the Secretary (in consultation with representatives of suppliers of medical equipment and supplies, carriers, and consumers) that shall include requirements that the supplier--
(I) comply with all applicable State and Federal licensure and regulatory requirements;
(II) maintain a physical facility on an appropriate site;
(III) have proof of appropriate liability insurance; and
(IV) meet such other requirements as the Secretary may specify.
(C) Exception for items furnished as incident to a physician's service. Subparagraph (A) shall not apply with respect to medical equipment and supplies furnished incident to a physician's service.
(D) Prohibition against multiple supplier numbers. The Secretary may not issue more than one supplier number to any supplier of medical equipment and supplies unless the issuance of more than one number is appropriate to identify subsidiary or regional entities under the supplier's ownership or control.
(E) Prohibition against delegation of supplier determinations. The Secretary may not delegate (other than by contract under section 1842 [42 USCS § 1395u]) the responsibility to determine whether suppliers meet the standards necessary to obtain a supplier number.

  (2) Certificates of medical necessity.
    (A) Limitation on information provided by suppliers on certificates of medical necessity.
      (i) In general. Effective 60 days after the date of the enactment of the Social Security Act Amendments of 1994 [enacted Oct. 31, 1994], a supplier of medical equipment and supplies may distribute to physicians, or to individuals entitled to benefits under this part [42 USCS §§ 1395j et seq.], a certificate of medical necessity for commercial purposes which contains no more than the following information completed by the supplier:
        (I) An identification of the supplier and the beneficiary to whom such medical equipment and supplies are furnished.
        (II) A description of such medical equipment and supplies.
        (III) Any product code identifying such medical equipment and supplies.
        (IV) Any other administrative information (other than information relating to the beneficiary's medical condition) identified by the Secretary.
      (ii) Information on payment amount and charges. If a supplier distributes a certificate of medical necessity containing any of the information permitted to be supplied under clause (i), the supplier shall also list on the certificate of medical necessity the fee schedule amount and the supplier's charge for the medical equipment or supplies being furnished prior to distribution of such certificate to the physician.
      (iii) Penalty. Any supplier of medical equipment and supplies who knowingly and willfully distributes a certificate of medical necessity in violation of clause (i) or fails to provide the information required under clause (ii) is subject to a civil money penalty in an amount not to exceed $ 1,000 for each such certificate of medical necessity so distributed. The provisions of section 1128A [42 USCS § 1320a-7a] (other than subsections (a) and (b)) shall apply to civil money penalties under this subparagraph in the same manner as they apply to a penalty or proceeding under section 1128A(a) [42 USCS § 1320a-7a(a)].
    (B) Definition. For purposes of this paragraph, the term "certificate of medical necessity" means a form or other document containing information required by the carrier to be submitted to show that an item is reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.
  (3) Coverage and review criteria. The Secretary shall annually review the coverage and utilization of items of medical equipment and supplies to determine whether such items should be made subject to coverage and utilization review criteria, and if appropriate, shall develop and apply such criteria to such items.
  (4) Limitation on patient liability. If a supplier of medical equipment and supplies (as defined in paragraph (5))--
    (A) furnishes an item or service to a beneficiary for which no payment may be made by reason of paragraph (1);
    (B) furnishes an item or service to a beneficiary for which payment is denied in advance under subsection (a)(15); or
    (C) furnishes an item or service to a beneficiary for which payment is denied under section 1862(a)(1) [42 USCS § 1395y(a)(1)];
  any expenses incurred for items and services furnished to an individual by such a supplier not on an assigned basis shall be the responsibility of such supplier. The individual shall have no financial responsibility for such expenses and the supplier shall refund on a timely basis to the individual (and shall be liable to the individual for) any amounts collected from the individual for such items

or services. The provisions of subsection (a)(18) shall apply to refunds required under the previous sentence in the same manner as such provisions apply to refunds under such subsection.
  (5) Definition. The term "medical equipment and supplies" means--
    (A) durable medical equipment (as defined in section 1861(n) [42 USCS § 1395x(n)]);
    (B) prosthetic devices (as described in section 1861(s)(8) [42 USCS § 1395x(s)(8)]);
    (C) orthotics and prosthetics (as described in section 1861(s)(9) [42 USCS § 1395x(s)(9)]);
    (D) surgical dressings (as described in section 1861(s)(5) [42 USCS § 1395x(s)(5)]);
    (E) such other items as the Secretary may determine; and
    (F) for purposes of paragraphs (1) and (3)--
      (i) home dialysis supplies and equipment (as described in section 1861(s)(2)(F) [42 USCS § 1395x(s)(2)(F)]),
      (ii) immunosuppressive drugs (as described in section 1861(s)(2)(J) [42 USCS § 1395x(s)(2)(J)]),
      (iii) therapeutic shoes for diabetics (as described in section 1861(s)(12) [42 USCS § 1395x(s)(12)]),
      (iv) oral drugs prescribed for use as an anticancer therapeutic agent (as described in section 1861(s)(2)(Q) [42 USCS § 1395x(s)(2)(Q)]), and
      (v) self-administered erythropoetin (as described in section 1861(s)(2)(P) [42 USCS § 1395x(s)(2)(P)]).

\* \* \* \* \*