# EXHIBIT 5

# *Supporting Statement for Paperwork Reduction Act Submissions*
## VERSION 2
*Durable Medical Equipment Regional Carrier Certificates of Medical Necessity*

### BACKGROUND

Medicare serves over 36 million beneficiaries and processes over 700 million claims per year. In order to process and pay such a large number of claims, Medicare contracts with 44 fiscal intermediaries to process Part A claims, and 28 carriers to process Part B claims including those for durable medical equipment, prosthetics, orthotics and supplies (DMEPOS). Using past experience and listening to the needs of Medicare providers, suppliers, and beneficiaries, HCFA identified problems associated with processing claims for DMEPOS. Those same sources have helped to provide successful solutions.

In 1991, we began looking at the way we process claims for DMEPOS. In consultation with our customers and our partners, we heard that we needed to focus more on customer service, to establish more uniform requirements for claims submission and adjudication, and to do a better job of preventing improper payments.

Prior to 1993, suppliers of DMEPOS submitted their claims to one of 33 different carriers for processing and payment. The biggest portion of these carriers' workload was physician submitted claims and this is where their efforts were concentrated. DMEPOS suppliers and beneficiaries often complained of slow claims payment and poor service on their inquiries. Carrier coverage policies for DMEPOS items were not consistent and often varied considerably among carriers across the country. National supplier chains submitted claims to several carriers, often with differing results. In a number of instances suppliers sought out the carriers with the least restrictive coverage policies (carrier shopping) and submitted their claims there. Electronic claims submission requirements differed between carriers, requiring suppliers to submit their claims in different formats. In addition, HCFA had no single focus to accumulate and analyze DMEPOS claims information for program management.

In partnership with suppliers, providers, and Medicare beneficiaries, HCFA sought to design solutions through consistent administrative actions to utilize current technology while reengineering the processes then in place. For example, to achieve more sophisticated and uniform coverage policy, to improve claims processing and to help prevent fraud and abuse, we concluded that we should concentrate all processing for equipment and supplies in a small number of specialized carriers. We believed that the use of a few regional carriers would greatly reduce the variance in coverage policy and utilization parameters among carriers. Greater efficiency would be achieved because each carrier would have a trained pool of experienced personnel who would be able to handle

1



the DMEPOS claims more effectively and process claims more quickly and accurately.

Starting in the Fall of 1993, HCFA began consolidating processing for DMEPOS claims at four durable medical equipment regional carriers (DMERCs). This consolidation also allowed for standardized submission of electronic claims. All suppliers were now able to use a single format to submit their claims to Medicare. This was a major redesign of the previous process which had well over 30 different electronic formats, a major deterrent to electronic billing.

Through these four carriers, we have achieved greater efficiency not only in the processing of claims but in the development and application of coverage policy and medical review. Each of the four DMERCs review Certificates of Medical Necessity (CMNs), which are submitted with claims for highly-abused items. The CMNs are consistent across the regional carriers, and suppliers are familiar with both the forms and the process of submitting them.

Through such action, HCFA has been able to ensure more appropriate and consistent payment of DMEPOS claims nationwide. Although the consolidation to regional carriers was just completed last year, we believe the data will show savings due to lower administrative costs and cost-effective pre-screening edits. By consolidating our operations, utilizing knowledgeable personnel and using cost effective technology we have created a more efficient and manageable claims processing system that better serves Medicare beneficiaries, providers and suppliers.

We learned that our customers have expectations and are a valuable resource when identifying areas where an organization needs improvement. By taking actions to meet those expectations current processes are improved and HCFA discovered new and different perspectives on old systems. We look forward to employing these newly practiced skills in the future.

**A.   JUSTIFICATION**

1.   *Need and Legal Basis*

Under Section 1862(a)(1)(A) of the Social Security Act (the Act), 42 U.S.C. §1395y(a), the Secretary may only pay for items and services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." In order to assure this, HCFA and its contractors develop Medical policies that specify the circumstances under which an item or service can be covered. Certificates of Medical Necessity provide a mechanism for suppliers of Durable Medical Equipment, defined in 42 U.S.C. §1395x(n), and Medical Equipment and Supplies defined in 42 U.S.C. §1395j(5), to demonstrate that the item being provided meets the criteria for

2



Medicare coverage.

Under Section 1834(j)(2) of the Act, 42 U.S.C. §1395m(j)(2), suppliers of DME items are prohibited from providing medical information to physicians when a CMN is being completed to document medical necessity. The physician who orders the item is responsible for providing the information necessary to demonstrate that the item provided is reasonable and necessary. Any supplier of medical equipment who knowingly and willfully distributes a CMN in violation of this restriction is subject to penalties, including civil money penalties (42 U.S.C. §1395m(j)(2)(A)(iii)).

Section 1833(e), 42 U.S.C. §1395l(e), provides that no payment can be made to any provider of services, or other person, unless that person has furnished the information necessary for Medicare or its contractor to determine the amounts due to be paid. Certain individuals can use a CMN to furnish this information, rather than having to produce large quantities of medical records.

2. *Information Users*

Certificates of Medical Necessity are designed to collect information required to determine the medical necessity of certain items. HCFA requires CMNs primarily for items prone to abuse. Suppliers (those who bill for the items) "fill in" the administrative information (e.g., patient's name and address, items ordered, etc.) on each CMN. For version 2, the 1994 Amendments to the Social Security Act require that the supplier also provide a narrative description of the items ordered and all related accessories, their charge for each of these items, and the Medicare fee schedule allowance (where applicable). The supplier then sends the CMN to the ordering physician who completes questions pertaining to the beneficiary's medical condition and signs the CMN. The physician returns the CMN to the supplier who retains a copy and submits the CMN (paper or electronic) to HCFA, along with a claim, for reimbursement.

Each claim for these items must have an associated CMN for the beneficiary. HCFA uses the information primarily to determine the medical necessity of the item, but may use it for other administrative reasons (e.g., determining whether the item is covered under warranty before reimbursing for a repair).

3. *Improved Information Techniques*

Collection of this information involves the state of automated, electronic, mechanical or other technology. The use of standard forms facilitates review by HCFA and is more efficient for the suppliers because necessary documentation and information is specifically spelled out -- eliminating the possibility of submitting unnecessary documentation.

3



Further, the CMNs can be submitted to the DMERCs in electronic format.

4. *Duplication and Similar Information*

The required medical information is not available outside the individual beneficiary's medical chart/folder kept by the physician. The CMN is designed to collect only the pertinent pieces of medical information without having to individually request medical charts from the physician each time a claim is submitted. This significantly reduces the burden on physicians and the time-frame in which suppliers receive payment.

The patient's name, address and Health Insurance Claim Number, though collected on the claim, are used for purposes of "matching" a claim to a CMN.

Further, for version 2, the law specifies that the suppliers' charge information and the Medicare fee schedule amount (where applicable) must be listed on the CMN "prior to distribution of [the CMN] to the physician."

5. *Small Business*

These forms will affect small businesses; however, these businesses have created, completed and processed CMNs since the DMERC regionalization. HCFA, in order to lessen the burden on these small businesses has provided free software to facilitate electronic billing. Further, we provide training throughout the country on how to file both claims and the associated CMNs. These standardized forms will only collect pertinent information to make a medical necessity determination. Without the forms, small businesses would be required to submit more individualized documentation to support their claims.

6. *Less Frequent Collections*

As discussed in item #1 above, CMNs are used by Medicare and its contractors to verify that items and services provided are reasonable and necessary, as required by Section 1862(a)(1)(A) of the Social Security Act, 42 U.S.C. §1395y(a)(1)(A). In this way, CMNs are indispensable to the Medicare program. Without use of these forms, the government would not be able to monitor utilization of certain items that are subject to frequent abuse, nor would the government be able to ensure that only appropriate payments are made. If the government did not use and evaluate the information provided in these forms, it would be very difficult to prevent inappropriate payments, and the Medicare Trust Fund would be vulnerable to abuse.

4



7. *Special Circumstances*

*More often than quarterly*
Over 60 percent of all DMEPOS claims require additional medical documentation, possibly on a daily basis for certain types of suppliers. Last year the Durable Medical Equipment Regional Carriers processed approximately 30 million claims at a cost to Medicare of roughly $3.2 billion dollars. The CMNs currently in place have provided protection to the Trust Fund by ensuring only reasonable and necessary claims are paid. Additionally, the CMNs actually cut the paper work burden associated with filing a Medicare claim by allowing the supplier to submit just this one form. If this form was not utilized, the supplier would have to furnish all medical documentation, i.e. medical records creating additional burden on both the suppliers and physicians.

*Response within 30 days*
Respondents are not asked to respond within a certain time period. Suppliers maintain CMNs and submit them with claims for items that require them.

*More than Original and Two Copies*
Respondents submit only one original CMN.

*Retain Records for More than Three Years*
Respondents retain only medical records in conjunction with copies of CMNs.

*Conjunction with a Statistical Survey*
CMNs are not used in conjunction with a statistical survey.

*Use of Statistical Data Classification*
Use of CMNs do not require the use of a statistical data classification that has not been reviewed and approved by OMB.

*Pledge of Confidentiality*
CMNs do not include a pledge of confidentiality.

*Confidential Information*
CMNs do not require the submission of proprietary trade secrets. Respondents are required by law to submit information relating to their charge for certain items, but this does not constitute "confidential information."

8. *Federal Register Notice*

**The Federal Register Notice for this collection of information was published on Tuesday, November 5, 1996. HCFA will respond to all comments received. A copy of the draft Federal Register Notice is included in this package.**

5



In March, 1994, the American Medical Association, Practicing Physicians' Advisory Council, National Association of Medical Equipment Suppliers, Health Industry Distributors Association, and several other national and local supplier organizations expressed concerns that the existing CMNs were not user-friendly, and were burdensome. These forms continue to be used because many providers are familiar enough with them that completing them does not present much of a burden. However, in order to accommodate the suggestions of some of the national supplier organizations, HCFA and its contractors developed revised CMNs that are clearer and easier to complete. Thus, the revisions which were effective last year on 08/01/96. The revised, version 2, CMNs are currently in effect and are being used by all suppliers of durable medical equipment and medical equipment and supplies.

A detailed chronology of consultations with persons outside the agency is included as Attachment 1.

9.  *Payment/Gift to Respondents*

    No payment or gifts will be provided to respondents.

10. *Confidentiality*

    There is no confidentiality concern associated with this request.

11. *Sensitive Questions*

    There are no questions of a sensitive nature associated with this request.

12. *Burden Estimate (hours)*

    The total annual hour burden for the respondents falls in a range of 1.13 to 1.7 million hours. This range is based on an estimated 10 to 15 minutes to complete the form. Currently, over 60 percent of all Medicare DME claims require CMNs. Therefore, this requirement has and will continue to be a cost of doing business with Medicare.

    5.1 million CMNs are received electronically. The electronic software is provided to billers free of charge to promote electronic billing. HCFA feels strongly that if the CMNs were not in place, the expense to the government would increase dramatically through substantial increases in medical review activities both in staffing and full scale claim development.



13. *Cost to Respondents*

    <u>Respondent Cost</u>
    Cost to the respondents is calculated as follows: $11.94 per hour times .17 hours (it should take the clerk no more than 10 minutes per CMN to fill out the information on the form). The clerical cost is $11.94 divided by 6 or $1.99 per CMN. It should take the physician no longer than 1 to 2 minutes to complete, review and sign the form. If the physician's time is valued at $75 per hour, 1 to 2 minutes is worth $1.25 to $2.50. The total cost per CMN is 1.99 + 1.25 = $3.24 or 1.99 + 2.50 = $4.49 in most cases. Adding copying, postage, and other administrative costs, we estimate the total cost per CMN to be between $4.50 - $8.00.

14. *Cost to Federal Government*

    <u>Federal Cost</u>
    Annually, Medicare receives approximately 6.8 million CMNs at a cost to the government of approximately 2 to 3 million dollars. Carrier data entry clerks require approximately 1 minute to enter the CMN. Their average annual salary in 1995 is $13,000. Their hourly wage is $6.25 (13,000 divided by 2080 hours). To handle the 1.7 million paper CMNs costs approximately $177,083; the average electronic claim cost is $.38 which equates to approximately $1.9 million (for 5.1 electronic CMNs). Additional handling of the CMN (e.g., medical review) costs approximately $1 million.

15. *Changes in Burden*

    There are no changes in burden.

16. *Publication/Tabulation*

    There are no plans to publish or tabulate the information collected.

17. *Expiration Date*

    We are not seeking approval to not display the expiration date.

18. *Certification Statement*

    There are no exceptions to the certification statement. This collection of information

7

