# EXHIBIT 6

## PAPERWORK REDUCTION ACT SUBMISSION

Please read the instructions before completing this form. For additional forms or assistance in completing this form, contact your agency's Paperwork Clearance Officer. Send two copies of this form, the collection instrument to be reviewed, the Supporting Statement, and any additional documentation to: Office of Information and Regulatory Affairs, Office of Management and Budget, Docket Library, Room 10102, 725 17th Street N.W., Washington, DC 20503

| 1. Agency/Subagency originating request | 2. OMB control number    b. ☐ None |
|---|---|
| Health Care Financing Administration | a. 0938 : 0679 |

| 3. Type of information collection (check one) | 4. Type of review requested (check one) |
|---|---|
| ☐ New Collection<br>☒ Revision of a currently approved collection<br>☐ Extension of a currently approved collection<br>☐ Reinstatement, without change, of previously approved collection for which approval has expired<br>☐ Reinstatement, with change, of a previously approved collection for which approval has expired<br>☐ Existing collection in use without an OMB control number<br><br>b-f, note item A2 of Supporting Statement Instructions | a. ☒ Regular submission<br>b. ☐ Emergency-Approval requested by: ___/___/___<br>c. ☐ Delegated<br><br>5. Small entities<br>Will this information collection have a significant economic impact on a substantial number of small entities?  ☐ Yes   ☒ No<br><br>6. Requested expiration date<br>a. ☒ Three years from approval date<br>b. ☐ Other Specify: _____ |

**Title**
Durable Medical Equipment Regional Carrier, Certificates of Medical Necessity

**Agency form number(s) (if applicable)**   HCFA-R-182

**Keywords** "Medicare, DME"

**Abstract** This information is needed to correctly process claims and ensure that claims are properly paid. These forms contain medical information necessary to make an appropriate claims determination. Suppliers and physicians will complete these forms.

| 11. Affected public (Mark primary with "P" & all others that apply with "X") | 12. Obligation to respond (Mark primary with "P" and all others that apply with "X") |
|---|---|
| ___ Individuals or Households   d. ___ Farms<br>_P_ Business or other for-profit   e. _X_ Federal Government<br>___ Not-for-profit Institutions   f. ___ State, Local or Tribal Govt. | a. ☐ Voluntary<br>b. ☒ Required to obtain or retain benefits<br>c. ☐ Mandatory |

| 13. Annual recordkeeping and reporting burden | 14. Annual reporting and recordkeeping cost burden (in thousands of dollars) |
|---|---|
| a. Number of respondents   140,000<br>b. Total annual responses   6.8 million<br>  1. Percentage collected electronically   75 %<br>c. Total annual hours requested   1.3 to 1.7 million<br>d. Current OMB inventory   0<br>e. Difference   0<br>f. Explanation of difference<br>  1. Program change   N/A<br>  2. Adjustment   N/A | a. Total annualized capital/startup Costs   0<br>b. Total annual Costs (O&M)<br>c. Total annualized cost requested<br>d. Current OMB inventory<br>e. Difference<br>f. Explanation of difference<br>  1. Program change<br>  2. Adjustment   software provided |

| 15. Purpose of information collection (Mark primary with "P" and all others that apply with "X") | 16. Frequency of recordkeeping or reporting (check all that apply) |
|---|---|
| _X_ Application for benefits   e. _X_ Program Planning or Mgmt.<br>_X_ Program evaluation   f. ___ Research<br>_X_ General purpose statistics   g. _P_ Regulatory or compliance<br>_X_ Audit | a. ☐ Recordkeeping   b. ☒ Third party disclosure<br>c. ☒ Reporting<br>  1. ☒ On occasion  2. ☐ Weekly   3. ☐ Monthly<br>  4. ☐ Quarterly   5. ☐ Semi-annually  6. ☐ Annually<br>  7. ☐ Biennially   8. ☐ Other(describe) _____ |

| 17. Statistical methods<br>Does this information collection employ statistical methods?<br><br>☐ Yes   ☒ No | 18. Agency contact (person who can best answer questions regarding the content of this submission)<br><br>Name: Ted Doyle, Off. of Benefits Integrity, BPO, HCFA<br>Phone: 410-786-7703 |

OMB 83-I                                                                 10/95

(1)

## Certification for Paperwork Reduction Act Submissions

[O]n behalf of this Federal agency, I certify that the collection of information encompassed by this request complies with 5 [C]FR 1320.9.

[NOT]E: The text of 5 CFR 1320.9, and the related provisions of 5 CFR 1320.8 (b)(3), appear at the end of the instructions. *The [certif]ication is to be made with reference to those regulatory provisions as set forth in the instructions.*

[The f]ollowing is a summary of the topics, regarding the proposed collections of information, that the certification covers:

(a) Is necessary for proper performance of the agency's functions and has practical utility;
(b) It avoids unnecessary duplication;
(c) It reduces burden on small entities;
(d) It uses plain, coherent and unambiguous terminology that is understandable to respondents;
(e) Its implementation will be consistent and compatible with current reporting and recordkeeping practices;
(f) It indicates the retention periods for recordkeeping requirements;
(g) It informs respondents of the information called for under 5 CFR 1320.8 (b)(3)

  (i) Why the information is being collected;
  (ii) Use of information;
  (iii) Burden estimate;
  (iv) Nature of response (voluntary, required for a benefit, or mandatory);
  (v) Nature and extent of confidentiality; and
  (vi) Need to display currently valid OMB control number;

(h) It was developed by an office that has planned and allocated resources for the efficient and effective management and use of the information to collected;
(i) It uses effective and efficient statistical survey methodology; and,
(j) It makes appropriate use of information technology.

[If you] are unable to certify compliance with any of these provisions, identify the item below and explain the reason in Item 18 of [the S]upporting Statement.

| [Signature of Sens]oring Official *Joe Jacobs* | Date 7/ 6 96 |
|---|---|
| [Signature of OMB] Clearance Officer | Date |
| [Signa]ture of Senior Departmental Official or Designee | Date |



# I. Background

## *Legislative Limitations*

The Social Security Act, Section 131 (2) (A) of the Amendments of 1994 requires that a supplier may not distribute a CMN that contains "more than the following information completed by the supplier:"

    (I)    An identification of the supplier and the beneficiary to whom the items or supplies are furnished;

    (II)    A description of the medical equipment and supplies;

    (III)    Any product code identifying the medical equipment and supplies;

    (IV)    Other administrative information identified by the Secretary.

Further, the law mandates that suppliers include the fee schedule amount and the supplier's charge for the item on the certificate of medical necessity before it is sent to the physician.

Congress also provided civil monetary penalties if a supplier distributes a form which contains prohibited information, or if the supplier fails to include information on the payment amount or charges.

## *Purpose of Certificates of Medical Necessity (CMNs)*

A Certificate of Medical Necessity is a standardized format used to communicate information provided by an attending physician and a supplier of medical equipment and supplies. The information is used by carriers to determine the medical necessity of an item or service covered by the Medicare program and being used for the treatment of the Medicare beneficiary's condition.

The CMNs currently under OMB review are necessary in order for HCFA to determine the medical necessity of the item or service. The information needed to make this determination requires application of medical judgement that can only be provided by a physician or other clinician who is familiar with the condition of the beneficiary.

# II. Changes Made In Response to Comments Received During Last Year's Approval Process

## *One-Page CMNs (with one exception)*

Because of the many concerns raised by both suppliers and physicians during this review process, HCFA and the DMERCs have agreed to make several changes to the CMNs (outlined in detail below) that allow all but 1 CMN to be condensed into a 1 page paper format. The Wheelchair

1

③

CMN, which remains 2 pages in paper format, could not be condensed. The number of questions in Section B and the potential for the need to list charge information for many accessories and options in Section C prohibited us from feasibly condensing the CMN for wheelchairs.

**11/05/96: Included in this submission are the revised ONE page CMNs for Oxygen, Motorized wheelchairs and manual wheelchairs.

### *Unique Physician Identification Number (UPIN)/Physician Telephone Number*

HCFA agrees that this information is administrative and suppliers should not be prohibited from providing it; therefore, the required fields will be moved to Section A. To ensure that we get the most accurate information available, we changed the physician attestation statement to require the physician to attest to the accuracy of this identifying information.

The UPIN is required on all carrier claims to identify and document the referring/ordering physician associated with claims for consultations, therapies, laboratory tests, radiology services and DMEPOS payable by Medicare. If the ordering/referring and performing physician, are the same, the performing physician's name and UPIN is required in items 17 and 17a of the HCFA-1500 form.

A referring physician is one who requests an item or service for the beneficiary for which payment may be made under the Medicare program. A request might include, for example, a consultation with physician of another specialty.

An ordering physician is one who orders non-physician services for the patient, such as diagnostic laboratory tests, clinical laboratory tests, pharmaceutical services, or durable medical equipment test.

### *Financial Relationship*

It is not our intention to exclude any physician or clinician that is familiar with the patient from answering the questions in Section B (other than the supplier). However, as a result of the number of questions both the DMERCs and HCFA have received, the instructions for completing section B have changed to correspond with the statute. The instructions now read: "Information below may not be completed by the supplier of the item/supplies." We will, however, still capture information about the person completing Section B. We will require the person completing section B to provide their name, title, and the name of their employer.

### *Physician Attestation Statement*

It is not our intent to have the physician attest to the accuracy of the charge information the supplier provides. Therefore, the physician attestation statement is now a narrative that allows the physician to validate or confirm 1) that the person who completed section B provided the medical information as required by law and 2) the accuracy of the self-identifying information (UPIN and telephone number) in section A and 3) the receipt of all sections of the CMN, including supplier charge information.



## *Warranty*

Warranty information is necessary because it is inappropriate for Medicare to provide reimbursement for repairs and replacements when an item is under warranty. However, HCFA and the DMERCS recognize suppliers' concerns about providing warranty information on every CMN when the claims volume for repairs and replacements is small. In response to these concerns, we decided not require warranty information on CMNs at this time. We may revisit this decision in the future, but will also continue to explore alternative ways to collect this information.

## *Cover letters*

It not HCFA's or the DMERC's intent to restrict communication between the supplier and the physician. Cover letters can be used as a way for suppliers to communicate with physicians. The information contained in the cover letters should address issues relating to HCFA or carrier regulation/policy changes, brief descriptions of the item being provided, its use, and changes in the patient regimen.

Section C of the CMN was designed not only to provide the physician with charge information but also to function as a confirmation of the physician's order. However, if suppliers wish to duplicate physician order information in a cover letter, they should feel free to do so.

## III. Responses to Other Specific Comments

The revised CMNs contain questions that are identical to those contained in the package that was sent out to supplier and physician groups for their comments in March, 1994 and were addressed at that time. Therefore, our responses will not address comments that pertain to individual CMN question sets.

In addition, some commenters used this opportunity to comment on some other DME-related topics, such as making payment determinations in advance for items of DME. In this package, we have addressed only the comments that pertain to the clearance of the new versions of CMNs.

**CMNs present an unfair burden to suppliers who submit claims to DME Regional Carriers because Home Health Agencies do not require the same type of documentation. CMNS are a standardized (allowing electronic transmission of the information) way of communicating information needed to determine the medical necessity of the claim. This presents less of a burden than requiring submission of individual patient medical records (which are non-standardized).** DMERCs process claims for DME, prosthetics, orthotics and supplies while Regional Home Health Intermediaries (RHHIs) process home health and hospice claims. HCFA, through any of its contractors, retains the right to pursue the use of CMNs in any other benefit areas.



Also, HCFA has begun an initiative to promote consistency and cooperation in policy development (including documentation requirements) between RHHIs and the DMERCS.

**The creation of the DMERCS, standardization of HCPCS codes, mandatory ICD-9 submission, and the availability of suppliers to bill electronically have all improved the process by which suppliers submit claims to Medicare.**
HCFA and the DME supplier industry have worked cooperatively to initiate these measures.

**The expansion from one wheelchair CMN to two CMNs (one for manual chairs and one for motorized chairs) has increased the burden on suppliers. The same is true for the CMNs for seat lift mechanisms and power operated vehicles.**
Creating one CMN for each item that requires a CMN was a suggestion made by physician organizations to the HCFA/DMERC workgroup which was charged with revising the forms. Requiring physicians to complete CMNs that included questions for multiple items (some of which he/she had not necessarily ordered) was seen as unduly burdensome and confusing for physicians. We addressed supplier concerns by reducing most CMNs to a 1 page paper format.

**Suppliers may not deliver items to beneficiaries until they have submitted claims with CMNs attached.**
Medicare does not prohibit the delivery of items to beneficiaries before filing claims and CMNs (provided the supplier has received an order from a physician). However, suppliers may not submit claims for payment without CMNs.

**Move the HCPCS codes, estimated length of need and ICD-9 boxes into Section A.**
There is space for HCPCS codes in Section A of each CMN. We considered the possibility of moving the other boxes into Section A. However, we have determined that the ICD-9 codes and estimated length of need represent information that pertains to the medical condition of the patient and it would be inappropriate for the supplier to be providing this information to the physician, and will thus remain in Section B. In addition, these elements were in Section B of the CMNs that were sent out for an informal comment period prior to their release. Comments of this nature were not made at that time.

**On June 9, 1995, at a meeting of the Practicing Physicians Advisory Council (PPAC), Linda Ruiz announced that HCFA would be taking control of the CMN revision process.**
HCFA has been responsible for implementing the provisions in the Social Security Act that pertained to CMNs, and actively participated in the original CMN revision process. When it was determined that these forms needed to be standardized, and thus subject to OMB review, HCFA assumed responsibility for these forms. Until that time, the DMERCs did not require a standard form for the certificates of medical necessity.

**Section C of the CMNs is inadequate for educating physicians on Medicare coverage policies and on DMERC medical review policies.**
Section C is not intended to educate physicians on Medicare coverage policies or on DMERC

4



medical review policies. Section C is intended to give the supplier an opportunity to confirm the original order from the physician and to include the fee schedule and charge information, as required by law.

A Physician Information Sheet, including information on Medicare coverage policies and DMERC medical review policies, was originally required to be sent to physicians with every CMN. At the request of supplier organizations, however, this requirement was removed. Suppliers are encouraged to use the physician information sheet in order to educate physicians on Medicare coverage policies and on DMERC medical review policies.

**CMNs should be targeted to abusive suppliers and to items that are abused.**
The Social Security Act requires that payment be made only for items and services that are reasonable and necessary. HCFA is required, therefore, to ensure the medical necessity of all items provided, not only those provided by certain suppliers. CMNs are used for this purpose.

When the DMERCS were regionalized, HCFA instructed them to develop CMNs for items that were identified as being particularly vulnerable to overutilization. As part of the CMN revision process which began in October of 1994, 3 CMNs were eliminated and 3 were replaced with alternative methods for collecting medical necessity information.

For the CMNs which remain, the DMERC medical directors have determined the specific information needed to make a medical necessity determination. This information requires the application of medical judgement that can only be provided by a physician or other clinician who is familiar with the condition of the beneficiary.

**Administrative information on the revised CMNs (beneficiary address, supplier address, name and address of facility other than home, replacement and warranty information) is not currently in use and is not required on electronic transmission of CMNs.**
HCFA does, in fact, use the information for identification as well as for documentation purposes. Physicians may use the information to correctly identify the beneficiary for whom he/she is completing the form. HCFA also uses the information during post-payment reviews and to trace patterns of utilization. Most of this information is required on both the current and the revised CMNs.

**HCFA should list each statutory or administrative justification for each non-medical necessity information item.**
All of the information that does not relate directly to the medical necessity of the item is used for documentation or identification purposes. This type of information is routinely requested in a number of situations and is not unique or unusual. Moreover, carriers have the discretion to ask for any information necessary to make appropriate payment. HCFA does not see this request for non-medical information as unreasonable.

**HCFA has underestimated the costs and amount of time required for successful completion**

5



of CMNs.
HCFA received comments stating that we had grossly underestimated the costs associated with completing CMNs.

Suppliers provided us a broad spectrum of costs associated with CMN completion. The costs ranged from $4.17 to $40.00. In its original calculation, HCFA did not consider administrative costs (postage, supplies, telephone, etc.) when it made the estimate of $4.49 per CMN. Adding these costs in, HCFA estimates that the cost of completing a CMN ranges between $4.50 - $8.00.

**Requiring that physicians complete CMNs presents an administrative burden and high costs and puts beneficiaries at risk.**
To reiterate the law, Section 1834(j)(2)(A)(ii) of the Social Security Act specifies the types of information that suppliers are permitted to include in CMNs that they send to physicians.

As part of the CMN revision process, the DMERCS and HCFA determined that although the supplier was prohibited from providing certain information, physicians themselves should not be required to complete the forms. CMNs may be completed by another clinician who is familiar with the patient's clinical condition. Supplier and physician organizations have applauded this decision.

**The CMN contains information that is duplicated on the HCFA 1500.**
The CMN must be reviewed and signed by the physician, and may be completed by another clinician who is familiar with the condition of the beneficiary. Therefore, the information is necessary to ensure that the CMN is being completed for the appropriate beneficiary. In addition, the HCFA 1500, the actual claim form sent directly to the DMERC, is never seen by the physician or other person completing the form.

**Section D should no longer be necessary if suppliers are permitted to provide a written confirmation of the physician's order in cover letters, and charge information is included on page 1 of the form.**
Section D includes the physician's signature, attesting to the accuracy of the medical necessity information, self-identifying information, and the presence of the charge information, required by law.

**HCFA oversteps the authority provided in the statute by requiring the charge information for all items, accessories, and options.**
HCFA is well within the bounds of its authority. Section 1834(j)(2)(A)(ii) states that "[i]f a supplier distributes a certificate of medical necessity containing any of the information permitted to be supplied under clause (I), the supplier shall also list on the certificate of medical necessity the fee schedule amount and the supplier's charge for the medical equipment or supplies being furnished." This provides authority for requiring charge information for accessories and options being furnished.

6



This also meets an expressed desire of physician organizations to be provided with this information.

**Suppliers should be permitted to provide physicians with a written confirmation of verbal order, which may include the name of the person making the order, descriptions of the equipment and supplies being ordered, answers to question sets, and a justification of medical necessity.**
Suppliers are not prohibited from sending cover letters to physicians. However, providing physicians with answers to question sets and a justification of the medical necessity of the item and supplies being ordered is in direct violation of the statute.

**Must suppliers maintain the original CMNs on file, or may they maintain copies of CMNs?**
If a supplier submits a hard-copy CMN, that supplier must maintain a photocopy of it on file. For electronic billers, the original CMN must be maintained.

**CMNs should include a statement clarifying that physicians may not charge suppliers for their time to complete the CMN.**
The Office of Inspector General (OIG) considers the solicitation of fees by physicians for completion of the CMN form to be a potential felony. Allegations of physicians charging for completion of CMNs may be considered under one or more of the following: (1) As a potential kickback under Section 1128 (B) (b) of the Social Security Act, (2) Possible false representation of the physician's actual charge for professional services provided on or near the date of their DMEPOS order for the patient, (3) As a potential violation of assigned claims for professional services provided on or near the date of their DMEPOS order for the patient, and/or (4) A potential violation of the limiting charge provisions on unassigned claims for the physician's professional services provided on or near the date of their DMEPOS order for the patient.

**The heading of Section A should include the following language: "Information to be completed by the supplier."**
We agree with this suggestion and have incorporated this type of explanatory language into the CMNs.

**Delete the area including the name and other information about the person completing the form.**
HCFA decided to still require this identifying the information on the CMN. Originally, HCFA had included language in the Section B instructions to prohibit anyone in a financial relationship from completing the form. Because clearly defining a "financial relationship" is problematic, HCFA decided to remove the language and simply state that suppliers were prohibited from completing the form. However, in order to enforce this statutory prohibition, it is important for HCFA to know who completed the form. There is no other way to collect this information.

**HCFA should clarify whether suppliers are required to include the Medicare allowed amount or the Medicare fee schedule amount in the section pertaining to charge**



information.
The Social Security Act specifically states that suppliers are to include the Medicare fee schedule amount.

What should suppliers do when fee schedule amounts are not updated by January 1?
Suppliers should include the most current fee schedule amount.

If suppliers wish to include a separate page including additional charge information, should the physician sign both pages, or only once, (at the end or at the bottom of the first page)?
The physician should sign in the box reserved for the physician signature. If they wish, suppliers may attach additional pages, but must adhere to the requirement that they retain these pages on file.

HCFA should not require CMNs for both initial and revised certifications.
The requirements for recertification are detailed in national policy as well as the regional medical review policies (RMRPs) for the individual items. The DMERCS are always available to discuss RMRPs with suppliers. If suppliers would like to have input into the revision of an existing RMRP, they should contact the DMERC which processes their claims.

HCFA received several copies of letters sent from a supplier company to physicians. This form letter tells physicians that they are required by Medicare to complete CMNs. There is space in the letter for physicians to include their input, then an instruction to send the letter back to the company so that the company can forward all of the letters they receive to HCFA.
Many of these letters were found to be form letters. HCFA believes that the comments made by physicians in these letters is based on incorrect information provided to them by someone other than HCFA or the DME Regional Carriers. We do not consider it appropriate to address these misguided comments here.

How does the charge for each item of DME pertain to the true medical need of the patient?
The requirement that suppliers include charge information on CMNs is a provision of the Social Security Act. The intent is to educate physicians as to the costs of items of DME, prosthetics, orthotics, and supplies so that they will have the capability to order what is truly medically appropriate. Physician organizations have expressed their support of this provision.

Physicians should be required to sign page one of each CMN.
This concern has been addressed. All but one of CMNs are now 1 page. However, even when the CMN is 2 pages (Wheelchairs), the physician is only required to sign one page of each CMN.

The date of the most recent physician examination is not specifically addressed on the new CMN.
When the revised CMNs were initially sent out to physician and supplier organizations for their input, there was a suggestion from a supplier group to eliminate the question pertaining to the

8



date of the most recent physician examination. The requirement was removed and the DMERCS determined that this was an appropriate change.

The specific protocol for documenting the medical necessity of specialty formulae is unclear as well.
The DMERCS intend to revise the published Regional Medical Review Policy (RMRP) for enteral nutrition in the future. This will provide clarification of the appropriate medical necessity documentation for enteral nutrition.

It is uncertain how to document the justification of providing a quantity of services outside of the range specified in policy.
In these situations, suppliers are permitted to attach additional documentation for the DMERC to review.

It is clear that after the conversion from version .01 CMNs to version .02 CMNs, the DMERCS will only accept version .01 CMNs in a hard-copy format. There has been no survey for the DMERCS to use in determining the number of hard-copy CMNs to expect. After 7/1/96, the proposed deadline for suppliers to convert to using version .02 CMNs, the DMERCS will no longer accept version .01 CMNs.

What should suppliers do when physicians or nurses do not comply with the completion requirements?
The Social Security Act includes several provisions relating to the completion requirements of CMNs. For example, the statute prohibits suppliers from completing CMNs, but maintains that carriers have the authority to require CMNs for the purposes of documenting medical necessity. If Section B of a CMN is not entirely completed by the physician or nurse, it may indicate that the beneficiary does not meet the necessary criteria.

The instructions on the reverse sides of new CMNs force suppliers to incur extra costs.
The former v.01 CMNs included instructions on the reverse sides as well. Therefore, printing instructions on the new CMNs should not represent additional costs to suppliers. In addition, suppliers have expressed the concern that physicians do not fully understand CMNs, and sometimes do not complete them correctly. HCFA expects that the instructions on the CMNs will help to prevent mistakes in the completion of the forms.

9

