# EXHIBIT 7

**IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| POWER MOBILITY COALITION | ) | |
| | ) | |
| vs. | ) | Civil Action No. _____ |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, | ) | |
| United States Department of Health and | ) | |
| Human Services, and | ) | |
| MARK B. McCLELLAN, Administrator, | ) | |
| Centers for Medicare and Medicaid Services | ) | |

DECLARATION OF TIMOTHY K. ZIPP

I, Timothy K. Zipp, do hereby declare under penalty of perjury as follows:

1. I am an Executive Vice President at The Scooter Store ("TSS"). I have held my current position for approximately four years. I previously served as TSS's Operations Manager and Vice President of Billing and Collections, among other positions. In these positions my job duties have included managing Medicare compliance activities, researching pertinent rules and regulations, analysis of auditing and monitoring, and managing the claims adjudication process.

2. TSS is a leading national supplier of motorized wheelchairs and scooters. TSS also is a member of the Power Mobility Coalition, a national coalition of suppliers and manufacturers dedicated to providing power mobility equipment and services to elderly, seriously ill, and disabled Americans.

3. A power wheelchair usually has six wheels and is steered using a "joystick." These devices offer excellent maneuverability and are relatively compact. They are particularly well-suited for use indoors. Medical electric scooters have either three or four wheels and steer much like a bicycle, using handlebars. Power wheelchairs and scooters are together sometimes referred to as power mobility devices, or "PMDs."

4. PMDs allow their users to care for themselves at home and be productive members of their community. Each year, approximately 200,000 elderly and infirm Americans receive PMDs in order to accomplish such basic life tasks. Since its founding 1991, TSS has provided these benefits to more than 200,000 people through its sales of power wheelchairs and scooters.

5. During the last five to ten years, a number of factors contributed to an increase in demand for PMDs. First, technological advances permitted a greater proportion of persons who potentially could benefit from a power mobility device actually to use a PMD successfully. Most new PMDs have a smaller turning radius than older PMDs, which makes them more usable (and therefore usable by a wider range of individuals whose movement is impaired) and allows them to navigate confined interior spaces such as bathrooms, corridors, and doorways in apartments and smaller homes. Other improvements in PMDs include changes that have made them smaller, more comfortable, and easier to operate and maintain.

6. TSS and other PMD suppliers also have made efforts to inform consumers and medical professionals about the mobility options that the new power wheelchairs and scooters provide.

7. In addition, the population most likely to benefit from PMDs is expanding. According to the Census Bureau, the number of Americans aged 65 and older increased from 34.6 million in 1999 to 35.9 million in 2003, and will continue to rise to as many as 86 million seniors in 2050.

8. Partly because of these factors, TSS's business has grown rapidly. After its founding at a single location in Texas in 1991, TSS was operating five locations in Texas by 1999, and had almost 60 locations in thirty-six states by the end of 2003. Today, TSS serves 40 states out of over 70 separate locations and employs approximately 1,100 people. The PMDs supplied by TSS have been prescribed by over 90,000 physicians across the country.

9. Although the number of PMDs approved for reimbursement by Medicare increased between 1999 and 2003, that number has subsequently fallen. The overall decrease in utilization for power mobility devices from 2003 to 2004 was more than 30%.

10. The vast majority of TSS's customers (more than 90%) are Medicare beneficiaries. Under the Medicare regulations that are in place today – but are scheduled to be replaced as of October 25, 2005 – physicians must evaluate patients' needs for PMDs and, where medically indicated, complete a Certificate of Medical Necessity ("CMN") (either "Certificate of Medical Necessity – Motorized Wheelchairs," HCFA Form 843 (5/97) (a copy of which is attached hereto as Exhibit A) or "Certificate of Medical Necessity – Power Operated Vehicle," HCFA Form 850 (4/96) (a copy of which is attached hereto as Exhibit B)). Equipment is then provided by one of many different suppliers of such equipment across the country.

11. The Medicare beneficiary's copayment for a PMD is 20% of Medicare's allowed charge for the device. 42 C.F.R. 410.38 and 410.152. While the copayment is the legal obligation of the beneficiary, this copayment amount may be covered by private insurance or Medicaid. TSS therefore generally supplies a PMD at little or no cost to the patient, and assumes the patient's entitlement to be reimbursed by Medicare.

12. After being contacted by a beneficiary interested in power mobility equipment, TSS provides his or her physician with a CMN that includes information about the beneficiary and the equipment in which the beneficiary has expressed interest. The physician completes the CMN by answering questions regarding the medical necessity of the products and certifying that the requested product is medically necessary. TSS then checks the CMN for completeness and then evaluates the patient's home environment and ability to operate the equipment safely. If the patient satisfies the applicable Medicare requirements and completes all necessary paperwork, TSS delivers the prescribed product and then submits the claim to the Centers for Medicare and Medicaid Services ("CMS") for reimbursement on the patient's behalf.

13. In this process TSS assumes the risk of non-reimbursement or delayed reimbursement, because TSS is required by CMS to provide the equipment before receiving any reimbursement. Once the supplier furnishes a PMD to a patient, the patient's dependence on the device and the low value of used PMDs usually make it unreasonable for the supplier to attempt to repossess the PMD.

14. TSS is legally obligated to provide equipment before being reimbursed, and given the length of time it takes to receive reimbursement from Medicare (approximately 2-3 weeks if the claim is approved without being contested, and as much as 2-3 years if the claim is questioned), and patients' need for timely access to mobility devices, suppliers like TSS are prohibited by law from billing CMS or waiting for CMS to approve the claim before delivering the PMD to the beneficiary.

15. The vast majority of PMD purchasers could not afford to buy or rent a device outside the Medicare program.

16. Because the viability of TSS's business depends on an assurance of timely and appropriate Medicare reimbursement, TSS is active in agency proceedings concerning the Medicare program. TSS has filed comments with the Department of Health and Human Services in connection with a number of recent proceedings, including a Policy Clarification and Medical Review Strategy issued by the Durable Medical Equipment Regional Carriers in December 2003, a proposed rule entitled "Medicare Program; Requirements for Establishing and Maintaining Medicare Billing Privileges," CMS-6002-P (Apr. 25, 2003), and a proposed rule entitled "Medicare Program: Revisions to Payment Policies Under the Physician Fee Schedule for Calendar Year 2005," CMS-1429-P (Aug. 5, 2004).

17. If TSS had been given an opportunity to participate in agency consideration of the new Interim Final Rule ("IFR") on PMD reimbursement that was issued on August 26, 2005, it would have done so. TSS plans to file comments in the "permanent" rule-making proceeding that was opened on the same day. Those comments are currently due on November 25, 2005.

18. I am familiar with the IFR that CMS adopted on August 26, 2005, which is scheduled to take effect on October 25, 2005. The IFR eliminates the traditional CMN

4

process, as defined by Congress, which uses a standardized, objective form to document the physician's determination of medical necessity. The new regulations instead make Medicare reimbursement dependent on Medicare officials' determinations as to the adequacy of the medical records and other patient information that prescribing medical professionals are required to generate, including a review of the treating practitioner's finding of a medical need for a PMD.

19. Under the IFR, physicians and other qualifying prescribers are required to write a detailed prescription rather than simply fill out a CMN form, and to gather and submit records from a patient's medical history in support of that prescription. On request, suppliers must submit the prescription and the supporting documentation, along with unspecified "additional documentation" if CMS or its agents determine that the medical professional's documentation is insufficient. The documentation that may be required in addition to the prescription includes the patient's medical history, physical examination and test results, the treating professional's diagnoses, summaries of findings, treatment plans, and other records from physician's offices, hospitals, and nursing homes, home health agencies, and other healthcare professionals.

20. The IFR requires that TSS or other PMD suppliers review the information they receive from medical offices in order to determine if it is sufficient to support a medical-necessity determination. Section 410.38(c)(4) of the IFR prohibits suppliers from providing PMDs unless they have received "supporting documentation" from the treating physician. However, rather than define the term "supporting documentation" as including a specific set of documents, the term is defined to mean any and all medical records from an open-ended list that support a finding of "medical necessity" for the PMD. Section 410.38(c)(2)(iii). Therefore, to determine if they have received the required supporting documentation, suppliers must engage in an evaluative process, analyze the contents of the documents, and draw a conclusion about their sufficiency, whether they support medical necessity. The risk of disallowance or a post-payment audit by CMS and civil or criminal penalties, make such review a practical requirement. To try to determine sufficiency, suppliers will have to review medical records, decipher handwritten clinical notes, analyze reports of medical examinations, and determine if additional documents are necessary to support the treating professional's determination of medical necessity. This process will be highly subjective and extremely burdensome, in terms of staff time and cost, and will create an adversarial relationship among doctors, suppliers, and carriers.

21. Medicare procedures also require PMD suppliers to retain such records for at least seven years. With the volume of records required under the IFR, it would cost TSS approximately $150,000 per year just to comply with that records-storage requirement (assuming that each claim requires 12 pages of documentation on average). The cost of records retention per claim is likely to be higher for TSS's competitors because TSS uses an efficient electronic document imaging system.

22. Under the CMN process, TSS was able to prepare standardized documentation, and physicians' medical conclusions were recorded in a clear and consistent manner.

This allowed TSS to clearly identify whether a physician believed products were medically necessary, and provided a bright line between medical expertise and equipment expertise. Neither statute nor regulation required TSS to evaluate medical records and examinations in order to determine if the medical case for a product was complete or sufficient.

23. CMS could have obtained additional information from physicians and suppliers about the medical necessity of PMDs while retaining the clarity and consistency of the CMN process, simply by extending the list of questions on the CMS. Indeed, in mid-2004 CMS drafted a revised version of the CMN (a copy of which is attached hereto as Exhibit C) that would have required additional information from physicians, and gave additional guidance about Medicare coverage of PMDs. CMS, however, never issued the revised CMN.

24. Under the new process, TSS will have to guess whether CMS and its agents will agree with the medical judgment of the patient's healthcare provider. And that prediction will have to be made against the background of CMS's often-stated desire to reduce Medicare reimbursements for PMDs (which was one of the animating reasons for the IFR). Knowing that CMS is looking to deny claims, and that there is no objective basis on which TSS could prove that the medical professional's judgment of medical necessity was correct, TSS must assume that (1) the new information requirements and the abolition of CMNs will allow CMS to contest many more claims than before and (2) any possible grounds for denying a claim would be invoked. TSS thus must expect that the rate of denial of Medicare reimbursement claims will be much higher than the historical rate of denials.

25. A few of the issues left unanswered by the IFR, which illustrate the difficulties TSS faces, are the following:

- Is Medicare reimbursement available if the patient's medical records are missing or illegible?

- If a supplier makes diligent efforts to obtain additional records requested by CMS, but the physician does not provide them through no fault of the supplier, will reimbursement be provided?

- Will CMS or its contractor contact the treating physician directly to provide the physician an opportunity to explain the determination of medical necessity?

- Is a supplier going to be held financially responsible if CMS determines that additional medical records, above and beyond those suppliers will be expected to review normally, contradict the conclusions on the physician prescription?

26. If the increased administrative costs and decreased reimbursements associated with the IFR make it unprofitable for TSS to continue to supply PMDs under the Medicare program, TSS will be unable to remain in business, resulting in the loss of the

more than 1,100 jobs provided by TSS and (in light of TSS's status as the largest PMD supplier in the United States) additional jobs with firms that manufacture PMDs. Even if the new reimbursement criteria are eventually clarified, either explicitly by CMS or through a process of trial and error by suppliers and physicians, a sustained period in which many claims are denied would drive TSS out of business.

27. Especially troubling, given the ambiguities created by the IFR, is that TSS would be subject to civil monetary penalties and exclusion from future participation in Medicare if it submitted a claim for a PMD that "is determined not to be medically necessary or reasonable" (42 C.F.R. §§ 402.1, 402.105, 402.107). Attempts to establish the parameters of the reimbursement criteria by submitting test claims would be perilous, given those penalties and the possibility of liability under the federal False Claims Act (31 U.S.C. § 3729), which provides for statutory fines and treble damages in the event of knowingly false or fraudulent claims.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Timothy K. Zipp

Executed on: October 12, 2005

# EXHIBIT A

U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

FORM APPROVED
OMB NO. 0938-0875

## CERTIFICATE OF MEDICAL NECESSITY

DMERC 02.03A

| MOTORIZED WHEELCHAIRS |
|---|

**SECTION A**      Certification Type/Date:      INITIAL ___/___/___      REVISED ___/___/___

| PATIENT NAME, ADDRESS, TELEPHONE and HIC NUMBER | SUPPLIER NAME, ADDRESS, TELEPHONE and NSC NUMBER |
|---|---|
| (___)___-___-_____ HICN _____ | (___)___-_____ NSC # _____ |

| PLACE OF SERVICE _____ NAME and ADDRESS of FACILITY if applicable (See Reverse) | HCPCS CODES: _____ _____ _____ _____ | PT DOB ___/___/___ ; Sex ___ (M/F) ; HT.____(in.) ; WT.____(lbs.) |
|---|---|---|
| | | PHYSICIAN NAME, ADDRESS, TELEPHONE and UPIN NUMBER |
| | | (___)___-___ UPIN # _____ |

**SECTION B**      Information in This Section May Not Be Completed by the Supplier of the Items/Supplies.

EST. LENGTH OF NEED (# OF MONTHS): _____ 1-99 (99=LIFETIME) | DIAGNOSIS CODES (ICD-9): _____ _____ _____ _____

| ITEM ADDRESSED | ANSWERS | ANSWER QUESTIONS 1, 6 AND 7 FOR MOTORIZED WHEELCHAIR BASE, 1-5 FOR WHEELCHAIR OPTIONS/ACCESSORIES. (Circle **Y** for Yes, **N** for No, or **D** for Does Not Apply, unless otherwise noted.) |
|---|---|---|
| Motorized Whlchr Base and All Accessories | Y  N  D | 1. Does the patient require and use a wheelchair to move around in their residence? |
| Reclining Back | Y  N  D | 2. Does the patient have quadriplegia, a fixed hip angle, a trunk cast or brace, excessive extensor tone of the trunk muscles or a need to rest in a recumbent position two or more times during the day? |
| Elevating Legrest | Y  N  D | 3. Does the patient have a cast, brace or musculoskeletal condition, which prevents 90 degree flexion of the knee, or does the patient have significant edema of the lower extremities that requires an elevating legrest, or is a reclining back ordered? |
| Adjustable Height Armrest | Y  N  D | 4. Does the patient have a need for arm height different than that available using non-adjustable arms? |
| Reclining Back; Adjustable Height Armrest | _____ | 5. How many hours per day does the patient usually spend in the wheelchair? (1–24) (Round up to the next hour) |
| Motorized Whlchr Base | Y  N  D | 6. Does the patient have severe weakness of the upper extremities due to a neurologic, muscular, or cardiopulmonary disease/condition? |
| Motorized Whlchr Base | Y  N  D | 7. Is the patient unable to operate any type of manual wheelchair? |

NAME OF PERSON ANSWERING SECTION B QUESTIONS, IF OTHER THAN PHYSICIAN (Please Print):
NAME: _____    TITLE: _____    EMPLOYER: _____

**SECTION C**      Narrative Description of Equipment and Cost

(1) <u>Narrative</u> description of all items, accessories and options ordered; (2) Supplier's charge; and (3) Medicare Fee Schedule Allowance for <u>each</u> item, accessory, and option. *(See instructions on back.)* If additional space is needed, list wheelchair base and most costly options/accessories on this page and continue on Form CMS-854.

☐ CHECK HERE IF ADDITIONAL OPTIONS/ACCESSORIES ARE LISTED ON Form CMS-854

**SECTION D**      Physician Attestation and Signature/Date

I certify that I am the treating physician identified in Section A of this form. I have received Sections A, B and C of the Certificate of Medical Necessity (including charges for items ordered). Any statement on my letterhead attached hereto, has been reviewed and signed by me. I certify that the medical necessity information in Section B is true, accurate and complete, to the best of my knowledge, and I understand that any falsification, omission, or concealment of material fact in that section may subject me to civil or criminal liability.

PHYSICIAN'S SIGNATURE _____    DATE ____/____/____    (SIGNATURE AND DATE STAMPS ARE NOT ACCEPTABLE)

CMS-843 (05/97) EF (04/2005)

| | |
|---|---|
| **SECTION A:** | **(May be completed by the supplier)** |
| CERTIFICATION TYPE/DATE: | If this is an initial certification for this patient, indicate this by placing date (MM/DD/YY) needed initially in the space marked "INITIAL." If this is a revised certification (to be completed when the physician changes the order, based on the patient's changing clinical needs), indicate the initial date needed in the space marked "INITIAL," and also indicate the recertification date in the space marked "REVISED." If this is a recertification, indicate the initial date needed in the space marked "INITIAL," and also indicate the recertification date in the space marked "RECERTIFICATION." Whether submitting a REVISED or a RECERTIFIED CMN, be sure to always furnish the INITIAL date as well as the REVISED or RECERTIFICATION date. |
| PATIENT INFORMATION: | Indicate the patient's name, permanent legal address, telephone number and his/her health insurance claim number (HICN) as it appears on his/her Medicare card and on the claim form. |
| SUPPLIER INFORMATION: | Indicate the name of your company (supplier name), address and telephone number along with the Medicare Supplier Number assigned to you by the National Supplier Clearinghouse (NSC). |
| PLACE OF SERVICE: | Indicate the place in which the item is being used; i.e., patient's home is 12, skilled nursing facility (SNF) is 31, End Stage Renal Disease (ESRD) facility is 65, etc. Refer to the DMERC supplier manual for a complete list. |
| FACILITY NAME: | If the place of service is a facility, indicate the name and complete address of the facility. |
| HCPCS CODES: | List all HCPCS procedure codes for items ordered that require a CMN. Procedure codes that do not require certification should not be listed on the CMN. |
| PATIENT DOB, HEIGHT, WEIGHT AND SEX: | Indicate patient's date of birth (MM/DD/YY) and sex (male or female); height in inches and weight in pounds, if requested. |
| PHYSICIAN NAME, ADDRESS: | Indicate the physician's name and complete mailing address. |
| UPIN: | Accurately indicate the ordering physician's Unique Physician Identification Number (UPIN). |
| PHYSICIAN'S TELEPHONE NO: | Indicate the telephone number where the physician can be contacted (preferably where records would be accessible pertaining to this patient) if more information is needed. |
| **SECTION B:** | **(May not be completed by the supplier. While this section may be completed by a non-physician clinician, or a physician employee, it must be reviewed, and the CMN signed (in Section D) by the ordering physician.)** |
| EST. LENGTH OF NEED: | Indicate the estimated length of need (the length of time the physician expects the patient to require use of the ordered item) by filling in the appropriate number of months. If the physician expects that the patient will require the item for the duration of his/her life, then enter 99. |
| DIAGNOSIS CODES: | In the first space, list the ICD9 code that represents the primary reason for ordering this item. List any additional ICD9 codes that would further describe the medical need for the item (up to 3 codes). |
| QUESTION SECTION: | This section is used to gather clinical information to determine medical necessity. Answer each question which applies to the items ordered, circling "Y" for yes, "N" for no, "D" for does not apply, a number if this is offered as an answer option, or fill in the blank if other information is requested. |
| NAME OF PERSON ANSWERING SECTION B QUESTIONS: | If a clinical professional other than the ordering physician (e.g., home health nurse, physical therapist, dietician), or a physician employee answers the questions of Section B, he/she must print his/her name, give his/her professional title and the name of his/her employer where indicated. If the physician is answering the questions, this space may be left blank. |
| **SECTION C:** | **(To be completed by the supplier)** |
| NARRATIVE DESCRIPTION OF EQUIPMENT & COST: | Supplier gives (1) a narrative description of the item(s) ordered, as well as all options, accessories,supplies and drugs; (2) the supplier's charge for each item, option, accessory, supply and drug; and (3) the Medicare fee schedule allowance for each item/option/accessory/supply/drug, if applicable. |
| **SECTION D:** | **(To be completed by the physician)** |
| PHYSICIAN ATTESTATION: | The physician's signature certifies (1) the CMN which he/she is reviewing includes Sections A, B, C and D; (2) the answers in Section B are correct; and (3) the self-identifying information in Section A is correct. |
| PHYSICIAN SIGNATURE | After completion and/or review by the physician of Sections A, B and C, the physician must sign and date the CMN in Section D, verifying the Attestation appearing in this Section. The physician's signature also certifies the items ordered are medically necessary for this patient. Signature and date stamps are not acceptable. |

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-0875. The time required to complete this information collection is estimated to average 15 minutes per response, including the time to review instructions, search existing resources, gather the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s), or suggestions for improving this form, write to: CMS, 7500 Security Blvd., N2-14-26, Baltimore, Maryland 21244-1850.

# EXHIBIT B

U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

FORM APPROVED
OMB NO. 0938-0679

## CERTIFICATE OF MEDICAL NECESSITY

DMERC 07.02B

### POWER OPERATED VEHICLE (POV)

| SECTION A | Certification Type/Date: | INITIAL ___/___/___     REVISED ___/___/___ |
|---|---|---|

| PATIENT NAME, ADDRESS, TELEPHONE and HIC NUMBER | SUPPLIER NAME, ADDRESS, TELEPHONE and NSC NUMBER |
|---|---|
| (___)___-____ HICN | (___)___-____ NSC # |

| PLACE OF SERVICE _____ | HCPCS CODES: | PT DOB ___/___/___ ; Sex ___ (M/F); HT.____(in.); WT.____(lbs.) |
|---|---|---|
| NAME and ADDRESS of FACILITY if applicable (See Reverse) | | PHYSICIAN NAME, ADDRESS (Printed or Typed)<br><br><br>PHYSICIAN'S UPIN:<br>PHYSICIAN'S TELEPHONE #: (___)___-____ |

| SECTION B | Information in this Section May Not Be Completed by the Supplier of the Items/Supplies. |
|---|---|

EST. LENGTH OF NEED (# OF MONTHS): _____ 1-99 (99=LIFETIME)     DIAGNOSIS CODES (ICD-9): _____ _____ _____ _____

| ANSWERS | ANSWER QUESTIONS 6 - 14 FOR POWER OPERATED VEHICLE (POV)<br>(Circle **Y** for Yes, **N** for No, or **D** for Does Not Apply) |
|---|---|
| | Questions 1 - 5, and 9 - 11, reserved for other or future use. |
| Y   N   D | 6.   Does the patient require a POV to move around in their residence? |
| Y   N   D | 7.   Have all types of manual wheelchairs (including lightweights) been considered and ruled out? |
| Y   N   D | 8.   Does the patient require a POV only for movement outside their residence? |
| Y   N   D | 12.  Is the physician signing this form a specialist in physical medicine, orthopedic surgery, neurology, or rheumatology? |
| Y   N   D | 13.  Is the patient more than one day's round trip from a specialist in physical medicine, orthopedic surgery, neurology, or rheumatology? |
| Y   N   D | 14.  Does the patient's physical condition prevent a visit to a specialist in physical medicine, orthopedic surgery, neurology, or rheumatology? |

NAME OF PERSON ANSWERING SECTION B QUESTIONS, IF OTHER THAN PHYSICIAN (Please Print):
NAME:                           TITLE:                           EMPLOYER:

| SECTION C | Narrative Description Of Equipment And Cost |
|---|---|

(1)  Narrative description of all items, accessories and options ordered; (2)  Supplier's charge;  and (3) Medicare Fee Schedule Allowance for each item, accessory, and option. *(See Instructions On Back)*

| SECTION D | Physician Attestation and Signature/Date |
|---|---|

I certify that I am the physician identified in Section A of this form. I have received Sections A, B and C of the Certificate of Medical Necessity (including charges for items ordered). Any statement on my letterhead attached hereto, has been reviewed and signed by me. I certify that the medical necessity information in Section B is true, accurate and complete, to the best of my knowledge, and I understand that any falsification, omission, or concealment of material fact in that section may subject me to civil or criminal liability.

PHYSICIAN'S SIGNATURE _____     DATE ___/___/___     (SIGNATURE AND DATE STAMPS ARE NOT ACCEPTABLE)

CMS 850 (4/96)

**SECTION A:**  **(May be completed by the supplier)**

**CERTIFICATION TYPE/DATE:** If this is an initial certification for this patient, indicate this by placing date (MM/DD/YY) needed initially in the space marked "INITIAL." If this is a revised certification (to be completed when the physician changes the order, based on the patient's changing clinical needs), indicate the initial date needed in the space marked "INITIAL," and also indicate the recertification date in the space marked "REVISED." If this is a recertification, indicate the initial date needed in the space marked "INITIAL," and also indicate the recertification date in the space marked "RECERTIFICATION." Whether submitting a REVISED or a RECERTIFIED CMN, be sure to always furnish the INITIAL date as well as the REVISED or RECERTIFICATION date.

**PATIENT INFORMATION:** Indicate the patient's name, permanent legal address, telephone number and his/her health insurance claim number (HICN) as it appears on his/her Medicare card and on the claim form.

**SUPPLIER INFORMATION:** Indicate the name of your company (supplier name), address and telephone number along with the Medicare Supplier Number assigned to you by the National Supplier Clearinghouse (NSC).

**PLACE OF SERVICE:** Indicate the place in which the item is being used; i.e., patient's home is 12, skilled nursing facility (SNF) is 31, End Stage Renal Disease (ESRD) facility is 65, etc. Refer to the DMERC supplier manual for a complete list.

**FACILITY NAME:** If the place of service is a facility, indicate the name and complete address of the facility.

**HCPCS CODES:** List all HCPCS procedure codes for items ordered that require a CMN. Procedure codes that do not require certification should not be listed on the CMN.

**PATIENT DOB, HEIGHT, WEIGHT AND SEX:** Indicate patient's date of birth (MM/DD/YY) and sex (male or female); height in inches and weight in pounds, if requested.

**PHYSICIAN NAME, ADDRESS:** Indicate the physician's name and complete mailing address.

**UPIN:** Accurately indicate the ordering physician's Unique Physician Identification Number (UPIN).

**PHYSICIAN'S TELEPHONE NO:** Indicate the telephone number where the physician can be contacted (preferably where records would be accessible pertaining to this patient) if more information is needed.

**SECTION B:**  **(May not be completed by the supplier. While this section may be completed by a non-physician clinician, or a physician employee, it must be reviewed, and the CMN signed (in Section D) by the ordering physician.)**

**EST. LENGTH OF NEED:** Indicate the estimated length of need (the length of time the physician expects the patient to require use of the ordered item) by filling in the appropriate number of months. If the physician expects that the patient will require the item for the duration of his/her life, then enter 99.

**DIAGNOSIS CODES:** In the first space, list the ICD9 code that represents the primary reason for ordering this item. List any additional ICD9 codes that would further describe the medical need for the item (up to 3 codes).

**QUESTION SECTION:** This section is used to gather clinical information to determine medical necessity. Answer each question which applies to the items ordered, circling "Y" for yes, "N" for no, "D" for does not apply, a number if this is offered as an answer option, or fill in the blank if other information is requested.

**NAME OF PERSON ANSWERING SECTION B QUESTIONS:** If a clinical professional other than the ordering physician (e.g., home health nurse, physical therapist, dietician), or a physician employee answers the questions of Section B, he/she must print his/her name, give his/her professional title and the name of his/her employer where indicated. If the physician is answering the questions, this space may be left blank.

**SECTION C:**  **(To be completed by the supplier)**

**NARRATIVE DESCRIPTION OF EQUIPMENT & COST:** Supplier gives (1) a narrative description of the item(s) ordered, as well as all options, accessories, supplies and drugs; (2) the supplier's charge for each item, option, accessory, supply and drug; and (3) the Medicare fee schedule allowance for each item/option/accessory/supply/drug, if applicable.

**SECTION D:**  **(To be completed by the physician)**

**PHYSICIAN ATTESTATION:** The physician's signature certifies (1) the CMN which he/she is reviewing includes Sections A, B, C and D; (2) the answers in Section B are correct; and (3) the self-identifying information in Section A is correct.

**PHYSICIAN SIGNATURE AND DATE:** After completion and/or review by the physician of Sections A, B and C, the physician must sign and date the CMN in Section D, verifying the Attestation appearing in this Section. The physician's signature also certifies the items ordered are medically necessary for this patient. Signature and date stamps are not acceptable.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-0679. The time required to complete this information collection is estimated to average 15 minutes per response, including the time to review instructions, search existing resources, gather the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Blvd., N2-14-26, Baltimore, Maryland 21244-1850.s

# EXHIBIT C

Department of Health and Human Services
Centers for Medicare & Medicaid Services

FORM APPROVED
OMB NO. XXXX-XXXX
DMERC XX.XX

**CONFIDENTIAL**

## Certificate of Medical Necessity

## WHEELCHAIRS (including POWER OPERATED VEHICLES)

**SECTION A**    This section must be completed by the TREATING PRACTITIONER. Information in this section MAY NOT BE completed by the supplier of this item. This section must be completed before this form is submitted to the supplier.

| CERTIFICATION TYPE: | Patient DOB: __/__/__    Height: ____    Weight: ____    Sex: |
|---|---|
| INITIAL   /   /    REVISED   /   / | |
| PATIENT NAME, ADDRESS, TELEPHONE and HICN | TREATING PRACTITIONER, NAME, ADDRESS, TELEPHONE & UPIN |

| ESTIMATED LENGTH OF NEED (MONTHS): ____   99 = LIFE)  Consider rental of this chair for short periods of medical necessity. | DIAGNOSIS CODE(S): ____ ____ ____ ____ |
|---|---|

**ALL PRODUCTS:** Answer Questions 1 through 3 for all products.

| | |
|---|---|
| 1. Medicare will only pay for a wheelchair if a patient's treating practitioner has completed a face-to-face examination of the patient.  **Please provide the date of this examination:** | __/__/__ |
| 2. Medicare covers a power operated vehicle (POV) when a patient needs one for use in his or her home.  **Does this patient need a wheelchair or POV to move around in his or her home?** | Y   N |
| 3. Medicare covers a wheelchair (including a POV) when, without it, the patient is bed or chair confined.  Without a wheelchair or POV, would this patient be bed or chair confined?  If there has been no face-to-face evaluation, or the answer to #2 or #3 is N, STOP; otherwise continue to Question 4. | Y   N |

**MANUAL WHEELCHAIR:** Answer Questions 4 through 6 for manual wheelchairs.

| | |
|---|---|
| 4. Medicare covers a manual wheelchair when the patient can self propel a manual wheelchair in his or her home.  Is this patient able to self propel a manual wheelchair in his or her home? | Y   N |
| 5. If this patient is unable to self-propel a manual wheelchair, Medicare covers a manual wheelchair for a caregiver to use to push the patient within this patient's home.  Is the manual wheelchair needed for a caregiver to push this patient within this patient's home? | Y   N   N/A |

**6. A manual wheelchair is appropriate for this patient. [ ] Yes   [ ] No   (Continue to Question 7)**

**POWER OPERATED VEHICLE (POV or Scooter):** Answer Questions 7 through 9.

| | |
|---|---|
| 7. Medicare will pay for the least costly medically acceptable item. Therefore, a manual wheelchair should be considered before a POV.  Have all types of manual wheelchairs been considered and ruled out before considering a POV? | Y   N |
| 8. Medicare covers a POV when a patient can safely transfer into, transfer out of, and ride in a POV, and when the patient can safely operate the controls of the POV.  Can this patient safely transfer into, transfer out of, ride in, and operate the controls of a POV in their home? | Y   N |

**9. A POV is appropriate for this patient. [ ] Yes [ ] No  (Continue to Question 10)**

**POWER WHEELCHAIR:** Answer Questions 10 through 13.

| | |
|---|---|
| 10. Medicare will pay for the least costly medically acceptable item. Therefore, a manual wheelchair or POV should be considered before a power wheelchair.  Have all options (manual wheelchair and POV) been considered and ruled out before considering a power wheelchair? | Y   N |
| 11. Medicare covers a power wheelchair when a patient has severe weakness of the upper extremities.  Does this patient have severe weakness of the upper extremities? | Y   N |
| 12. Medicare covers a power wheelchair when a patient can safely operate the controls of the wheelchair.  Can this patient safely operate the controls of a power wheelchair in their home? | Y   N |

**13. A power wheelchair is appropriate for this patient.**
**[ ] Yes [ ] No...a power wheelchair is not recommended at this time.**

NAME OF PERSON ANSWERING SECTION B QUESTIONS, IF OTHER THAN THE TREATING PRACTITIONER (Please Print):
NAME:                    TITLE:                    EMPLOYER:

I certify that I am the TREATING PRACTITIONER identified in Section A of this form, and that my identifying information is current and accurate. I have obtained this Certificate of Medical Necessity. Any statement on my letterhead attached hereto, has been reviewed and signed by me. I certify that the medical necessity information in Section A is true, accurate and complete, to the best of my knowledge, and I understand that any falsification, omission, or concealment of material fact in that section may subject me to civil or criminal liability according to Section 18 USC 287 of the criminal False Claims Act and Section 31 USC 3729-3733 of the civil False Claims Act. I certify I have evidence in the patient's chart to support this claim and if requested by the supplier or DMERC, I will provide this information in a timely fashion. I understand that providing this information is not a violation of HIPAA privacy standards.

SIGNATURE _____    DATE ___/___/___

CMS FORM XXXX (XX/YYYY)

**CONFIDENTIAL**

**CERTIFICATE OF MEDICAL NECESSITY: WHEELCHAIRS (INCLUDING POWER OPERATED VEHICLES)**

Page 2 of 2

PATIENT NAME: _____    PATIENT HICN: _____

**SECTION B   NARRATIVE INFORMATION AND COST (TO BE COMPLETED BY THE SUPPLIER AFTER RECEIPT OF COMPLETED AND SIGNED SECTION A.)**

| PLACE OF SERVICE CODE: _____ NAME AND ADDRESS OF FACILITY (if applicable): | HCPCS CODES OF PRODUCTS TO BE DELIVERED | SUPPLIER NAME, ADDRESS, TELEPHONE NUMBER AND NSC NUMBER: |
|---|---|---|
| | _____ _____ _____ _____ | |

Narrative (1) Description of all items, accessories and options ordered; (2) Product, Model and Serial Number(s) (if applicable) of products being delivered; (3)Supplier's charge; and (4) Medicare Fee Schedule Allowance for each item, accessory, and option. (See instructions on back.)

Medicare will cover a wheelchair or a POV when it is used in a patient's home and when all coverage criteria are met. The supplier should assure that a patient's home is able to accommodate the product.

**SUPPLIER ATTESTATION:**
I certify that I am the SUPPLIER identified on this Certificate of Medical Necessity and that the information provided is true, accurate, and complete, to the best of my knowledge. I understand that any falsification, omission, or concealment of material fact associated with billing this service may subject me to civil or criminal liability.

SUPPLIER SIGNATURE _____    DATE _____ / _____ / _____

CMS FORM (EIN) (MM/YYYY)

**CERTIFICATE OF MEDICAL NECESSITY: WHEELCHAIRS (INCLUDING POWER OPERATED VEHICLES)**
BOTH PAGES MUST BE SUBMITTED
Instructions for Completing Sections A

**CONFIDENTIAL**

**SECTION A:** (May not be completed by the supplier. The Treating Practitioner must complete this section prior to providing this form to the supplier)

**CERTIFICATION TYPE/DATE:** If this is an initial certification for this patient, indicate this by placing date (MM/DD/YY) needed initially in the space marked "INITIAL." If this is a revised certification (to be completed when the physician changes the order, based on the patients changing clinical needs), indicate the initial date needed in the space marked "INITIAL," and indicate the recertification date in the space marked "REVISED." If this is a recertification, indicate the initial date needed in the space marked "INITIAL," and indicate the recertification date in the space marked "RECERTIFICATION." Whether submitting a REVISED or a RECERTIFIED CMN, be sure to always furnish the INITIAL date as well as the REVISED or RECERTIFICATION date.

**PATIENT INFORMATION:** Indicate the patient's name, permanent legal address, telephone number and his/her health insurance claim number (HICN) as it appears on his/her Medicare card and on the claim form.

**PATIENT DOB, HEIGHT, WEIGHT AND SEX:** Indicate patient's date of birth (MM/DD/YY) and sex (male or female); height in inches and weight in pounds, if requested.

**TREATING PRACTITIONER NAME, ADDRESS:** Indicate the treating practitioner's name and complete mailing address.

**UPIN:** Accurately indicate the treating practitioner's Unique Physician Identification Number (UPIN), if applicable.

**TREATING PRACTITIONER TELEPHONE NO:** Indicate the telephone number where the treating practitioner can be contacted (preferably where records would be accessible pertaining to this patient) if more information is needed.

**DATE OF FACE-TO-FACE EXAMINATION:** Medicare law requires that a physician, a physician assistant, nurse practitioner, or a clinical nurse specialist conduct a face-to-face examination of this patient, and write a prescription for a motorized or power wheelchair before Medicare can make payment. Indicate the date of this examination.

**EST. LENGTH OF NEED:** Indicate the estimated length of need (in months) based on clinical evaluation. If the clinical evaluation warrants the use of the wheelchair (including POV) for the duration of his/her life, then enter "99". If the clinical evaluation warrants the use of the wheelchair (including POV) for less than 10 months, consider renting the item.

**DIAGNOSIS CODES:** In the first space, list the ICD9 code that represents the primary reason for ordering this item. List any additional ICD9 codes that would further describe the medical need for the item (up to 4 codes).

**QUESTION SECTION:** This section is used to gather clinical information to help Medicare determine the medical necessity for the item(s) being ordered. Answer each question that applies to the items ordered, circling "Y" for yes, "N" for no, or "N/A" for does not apply. Indicate which item is being ordered.

**ALL PRODUCTS:** Answer questions 1, 2 and 3. If there has been no face-to-face evaluation, or the answer to #2 or #3 is N, STOP and return this form to the supplier.

**MANUAL WHEELCHAIRS:** Answer questions 4 and 5. If the answers to questions 4 and 5 are N, Medicare may not provide coverage for a manual wheelchair, respond "No" to question 6 and proceed to question 7. If the answer to questions 4 or 5 is Y, Medicare may provide coverage for a manual wheelchair, respond "Yes" to question 6.

**POWER OPERATED VEHICLES:** Answer questions 7 and 8. If the answers to questions 7 and 8 are N, Medicare may not provide coverage for a power operated vehicle (also known as a scooter), respond "No" to question 9 and proceed to question 10. If the answers to questions 7 and 8 are Y, Medicare may provide coverage for a POV, respond "Yes" to question 9.

**POWER WHEELCHAIR:** Answer questions 10, 11 and 12. If the answer to question 10, 11 or 12 is N, Medicare may not provide coverage for a power wheelchair, respond "No" to question 13 and return the form to the supplier. If the answers to questions 10, 11 and 12 are Y, Medicare may provide coverage for a power wheelchair, respond "Yes" to question 13.

**NAME OF PERSON ANSWERING SECTION B QUESTIONS:** If a clinical professional other than the treating practitioner (e.g., home health nurse, physical therapist, dietician) or a physician employee answers the questions of Section A, he/she must print his/her name, give his/her professional title and the name of his/her employer where indicated. If the treating practitioner is answering the questions, this space may be left blank.

**TREATING PRACTITIONER ATTESTATION:** The treating practitioner must review, sign and date Section A verifying that the items ordered are medically necessary for this patient.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is XXXX-XXXX. The time required to complete this information collection is estimated to average 15 minutes per response, including the time to review instructions, search existing resources, gather the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate or suggestions for improving this form, please write to: CMS, Attn: PRA Reports Clearance Officer, 7500 Security Blvd, Baltimore, Maryland 21244.
DO NOT SUBMIT CLAIMS TO THIS ADDRESS. PLEASE SEE http://www.medicare.gov FOR INFORMATION ON CLAIM FILING.

**CERTIFICATE OF MEDICAL NECESSITY:**
**WHEELCHAIRS (including POWER OPERATED VEHICLES)**

Instructions for Completing Section B

Both pages must be submitted

CONFIDENTIAL

| | |
|---|---|
| **SECTION B:** | Must be completed by the supplier. The treating practitioner may not complete Section B. Section B must be completed after Section A has been completed and signed and dated by the treating practitioner. |
| **HEADER** | Enter the patient's name and HICN number as they appear on Section A of this form. |
| **PLACE OF SERVICE** | Indicate the place in which the item is being used, i.e., patient's home is 12, skilled nursing facility (SNF) is 31, End Stage Renal Disease (ESRD) facility is 65, etc. Refer to the DMERC supplier manual for a complete list. |
| **NAME AND ADDRESS OF FACILITY** | If the place of service is a facility, indicate the name and complete address of the facility |
| **HCPCS CODES OF PRODUCT(S) TO BE DELIVERED** | List all HCPCS codes for items being delivered. HCPCS codes that do not require certification should not be listed on the CMN |
| **SUPPLIER INFORMATION** | Indicate the name of your company (supplier name), address and telephone number along with the Medicare Supplier Number assigned to you by the National Supplier Clearinghouse (NSC). |
| **NARRATIVE DESCRIPTION OF EQUIPMENT & COST** | Provide (1) a narrative description of the item(s) ordered, as well as all options, accessories, supplies and drugs; (2) the product, model and serial number of the product being delivered (if applicable); (3) the supplier's charge for each item, option, accessory, supply and drug; and (3) the Medicare fee schedule allowance for each item/option/accessory/supply/drug, if applicable. |
| **SUPPLIER CERTIFICATION** | The SUPPLIER'S signature certifies (1) the answers in Section B are correct; and (2) the self-identifying information in Section B is correct. |

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is XXXX-XXXX. The time required to complete this information collection is estimated to average 15 minutes per response, including the time to review instructions, search existing resources, gather the data needed, and complete and review the information collection. If you have any comments concerning the accuracy of the time estimate or suggestions for improving this form, please write to: CMS, Attn: PRA Reports Clearance Officer, 7500 Security Blvd, Baltimore, Maryland 21244.

DO NOT SUBMIT CLAIMS TO THIS ADDRESS. PLEASE SEE http://www.medicare.gov FOR INFORMATION ON CLAIM FILING.